(No. 32493.)
Gracia M. F. Barnhart *et al.*, Appellees, *vs.* Stella La-Zelle Barnhart *et al.*—(Stella LaZelle Barnhart, Appellant.)

*Opinion filed May 20, 1953—Rehearing denied September 21, 1953.*

KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, and BELL, BOYD, MARSHALL & LLOYD, both of Chicago, and EDSON R. SUNDERLAND, of Ann Arbor, Michigan, (JOSEPH B. FLEMING, DWIGHT P. GREEN, JOSEPH H. PLECK, JOHN M. O'CONNOR, JR., LAIRD BELL, THOMAS L. MARSHALL, and CHARLES T. MARTIN, of counsel,) for appellants.

CHAPMAN & CUTLER, of Chicago, (GEORGE H. JIRGAL, and JOHN N. VANDER VRIES, of counsel,) for appellees Gracia M. F. Barnhart *et al.;* VERNON W. FOSTER, of Chicago, for appellee Morgan L. Fitch; DANIEL A. COSTIGAN, WILLIAM C. WINES, and HARRY S. DITCHBURNE, all of Chicago, for other appellees.

Mr. JUSTICE FULTON delivered the opinion of the court:

Appellant, Stella LaZelle Barnhart, individually and as administratrix of the estate of Arthur M. Barnhart, Jr., deceased, appeals from a decree of the circuit court of Cook County entered in a cause wherein Stella LaZelle Barnhart and Livy L. LaZelle, as trustees under the last will and testament of Arthur M. Barnhart, Sr., deceased, and Hiram P. Barnhart, Jr., *et al.,* were defendants and Gracia M. F. Barnhart *et al.* were plaintiffs. Cross appeals have been filed by the original plaintiffs challenging the correctness of certain rulings of the trial court. Hiram

P. Barnhart, Jr., *et al.* have also filed cross appeals. Morgan L. Fitch, who was named by the decree of the circuit court a successor trustee under the last will and testament of Arthur M. Barnhart, Sr., appears as appellee and has filed a brief and argument in his own behalf.

By their original complaint filed in the circuit court of Cook County on August 13, 1936, plaintiffs, who are descendants of full brothers and sisters of Arthur M. Barnhart, Sr., sought an accounting from Stella LaZelle Barnhart and Livy L. LaZelle as trustees under the will. The complaint also sought removal of the trustees, damages for alleged acts of wrongful investment, waste and mismanagement and the assessment of costs and expenses against the trust estate. The complaint asks that the court find and determine that the plaintiffs are the heirs-at-law of the testator and that they or their descendants are or will be the only persons entitled to share in the distribution of the *corpus* of the trust. Hiram P. Barnhart, Jr., *et al.,* who are descendants of brothers of the half blood of Arthur M. Barnhart, Sr., were made defendants and as to them the relief sought was that the court find and decree that they had no interest and would have no interest in the *corpus* of the trust provided for in said will.

After several motions to dismiss had been decided adversely to the defendant trustees, the cause was finally before the court on the second amended and supplemental complaint as amended. On June 24, 1942, upon motion of the defendant-trustees and of Stella LaZelle Barnhart, individually and as administratrix of the estate of Arthur M. Barnhart, Jr., deceased, over the objection of plaintiffs, the cause was referred to a master for the limited purpose of determining whether the plaintiffs and other collateral relatives had any interest in the trust estate, the nature and extent of such interest, if any, and whether or not attorneys' fees and costs should be allowed to the various parties and assessed and paid out of the trust estate. The term of the

master to whom the cause was referred expired while the proceedings were pending before him, but the cause was rereferred to him as special commissioner on July 17, 1944. The special commissioner's report filed on May 10, 1951, found that the will was ambiguous and required construction; that Stella LaZelle Barnhart either as heir-at-law of the testator, Arthur M. Barnhart, Sr., or as heir-at-law of her son, Arthur M. Barnhart, Jr., was entitled to the entire *corpus* of the trust estate; that the plaintiffs and other collateral relatives had no interest in the trust and that all parties were entitled to an allowance of attorneys' fees and costs to be taxed and paid out of the estate. All parties filed objections to the report of the commissioner. After these objections had been heard they were allowed to stand as exceptions. The exceptions were then heard by the trial court which, in an opinion filed October 24, 1951, decreed that it was the intention of the testator, manifest from the terms and provisions of the will, that the *corpus* of the trust estate be distributed to the persons constituting his heirs-at-law as of the date of the death of his widow, Stella LaZelle Barnhart; that the widow had no interest in the *corpus* of the trust and that none of the parties was entitled to an allowance of attorneys' fees and costs from the trust. After further testimony was heard the court decided the proportions in which the parties would ultimately share in the *corpus* of the trust, according to descendants of collateral relatives of the half blood the same status as those of the full blood. The court held in its opinion that those interested would be entitled to an accounting only if they could substantiate the charges of waste and mismanagement alleged in the complaint. It was further decided that a vacancy existed among the trustees under the provisions of the will. The formal decree signed on March 21, 1952, implementing the opinion, appointed Morgan L. Fitch as successor trustee. The decree ordered that one tenth of the costs be taxed against plaintiffs and

nine tenths of the costs be taxed against Stella LaZelle Barnhart individually. By the same decree the cause was referred to a master for the purpose of taking testimony on all issues raised by the pleadings and not passed upon and disposed of by the entry of the decree. This decree of March 21, 1952, is the decree from which the appeal and cross appeals have been perfected.

Counsel for appellees and cross appellants, Gracia M. F. Barnhart, *et al.,* and Hiram P. Barnhart, Jr., *et al.,* contend that the decree of March 21, 1952, is not a final and appealable order since it does not dispose of all of the issues in the case and that this court is, therefore, without jurisdiction to entertain the appeal. This raises a question which must be decided before considering any of the other matters urged. It must be remembered that the decree in question determined the ultimate rights of the opposing claimants to the *corpus* of the trust. While the complaint seeks an accounting and the decree does not dispose of that issue, it seems clear that before plaintiffs could avail themselves of that remedy, they must first establish their interest in the trust estate. Whether or not plaintiffs had such an interest was a separable issue. The defense urged against the complaint from the outset by motion and otherwise was that the plaintiffs had no right to an accounting because they had no interest in the fund. The reference to the master was for the limited purpose of resolving this preliminary question and the decree makes final disposition of it. Thus all rights of the plaintiffs in this case may be regarded as dependent upon the ultimate question resolved by the decree. We have held that a decree is "final" within the meaning of that term as used in section 77 of the Civil Practice Act (Ill. Rev. Stat. 1947, chap. 110, par. 201,) if it finally disposes of the rights of the parties either upon the entire controversy or upon some definite and separate branch thereof. (*Altschuler* v. *Altschuler,* 399 Ill. 559; *Brauer Machine and Supply Co.* v. *Parkhill Truck Co.* 383

Ill. 569.) A decree is final if it determines the ultimate rights of the parties with respect to distinct matters which have no bearing on other matters left for further consideration or if the matters left for future determination are merely incidental to the ultimate rights which have been adjudicated by the decree. (*Moore* v. *Moyle,* 405 Ill. 555.) The decree of the circuit court settles and determines the ultimate rights of the parties to the *corpus* of the trust and is, therefore, upon the above authority a final and appealable order. The remedy by way of an accounting is a mere incident which flows from a right established by the decree. We, therefore, hold that this court has jurisdiction to entertain this appeal.

A consideration of the interesting problem of will construction raised by this appeal demands an examination not only of the provisions of the will of the testator itself but of the circumstances surrounding the testator at the time of its execution. Certain events occurring after the probate of the will are also worthy of mention though not controlling. We shall begin, therefore, by stating those facts adduced at the hearing which we deem to be material to a determination of the issues.

Arthur M. Barnhart, Sr., a man of considerable wealth, who had for many years been engaged in the type foundry business in the city of Chicago with certain of his brothers and nephews, executed his will on July 20, 1911. At the time the will was executed the testator was 67 years of age. His first wife, by whom he had had no children, had died. His second wife, Stella LaZelle Barnhart, then aged 35 years, was living with testator, as was Arthur M. Barnhart, Jr., a son of the second marriage, aged 9½ years. Another child of the second marriage had died in 1904 at the age of 6 months. Testator's father, Peter Barnhart, had been married twice. Children were born to both marriages and testator was a child of the second marriage. At the time the will was made testator's parents and all

of his half brothers and sisters were dead. Many of their descendants were living but it appears that testator was not in contact with them, and their whereabouts for the most part were unknown to him. Of testator's full brothers and sisters, five of nine were living at the time he made his will, as were six full nephews and nieces. It appears that testator was on friendly terms with all his relatives of the full blood. This is especially evidenced by his benefactions. On the very day that he made his will he transferred $400,000 worth of securities in trust for his relatives, $100,000 for his surviving brothers and sisters of the full blood, except his brother, Alson E. Barnhart, who, like testator, was a man of considerable means; $75,000 for Maurice W. Barnhart, a nephew; $75,000 for Royal B. Hovey, a nephew; $75,000 for E. Warren Conable, a nephew; $50,000 for Frenella I. Barnhart, a niece; $25,000 for W. Earle Barnhart, a nephew. On the same day that he created the trusts and made his will he transferred $200,000 worth of securities by way of gift to his wife and a like amount to his son, Arthur M. Barnhart, Jr.

Arthur M. Barnhart, Sr., died on May 13, 1913, leaving him surviving his widow, his son and collateral relatives. His will was admitted to probate in Cook County on July 18, 1913. By the will he gave his entire estate to trustees to be held, managed and invested as directed. Named as trustees were the widow and two of testator's nephews. Another nephew was named in the event of the incapacity, death or designation of any of the others. The son of the testator was also designated to become a trustee upon reaching 21 years of age. The probate proceedings show that the estate consisting of both real estate and personal property was estimated at $1,341,000. The petition filed named certain of the collateral relatives and designates them as having an interest as "contingent devisees" and "contingent legatees." Following the probate of the will the nephews named as trustees and successor trustee

resigned. The widow continued to act as trustee and later her mother, N. Florence LaZelle, and her brother, Livy L. LaZelle, were appointed successor-trustees to act with her. Meanwhile inheritance taxes had been assessed and paid on the assumption that the widow had a life interest only. A tax was assessed against the interests of the collateral relatives as "possible contingent heirs." In a later proceeding brought by the widow in the superior court of Cook County, the court approved the action of the trustees in paying inheritance taxes, found that there was among the assets of the estate a claim against Stella LaZelle Barnhart for $17,573.28 for inheritance tax paid on her behalf and that the sum of $15,357.13 paid as inheritance tax for the possible contingent heirs "is a claim against said contingent heirs should they further become entitled to any part of said estate."

On December 10, 1922, Arthur M. Barnhart, Jr., attained his majority and became a fourth trustee under the will. On December 11, 1934, N. Florence LaZelle died but no successor-trustee was appointed. On April 7, 1936, Arthur M. Barnhart, Jr., died. Since his death Stella LaZelle Barnhart and Livy L. LaZelle have acted as sole trustees. Arthur M. Barnhart, Jr., died intestate and a bachelor. His mother qualified as administratrix of his estate and still maintains that capacity. She filed an inventory in the estate of her deceased son which does not list as an asset any interest in the trust estate of Arthur M. Barnhart, Sr.

The will of Arthur M. Barnhart, Sr., contains four clauses. The dispositive provisions of the will are found entirely in the second clause. The first clause directs the payment of debts and funeral expenses. The third clause directs that the son, Arthur M. Barnhart, Jr., shall become one of the trustees on attaining 21 years of age and provides for the succession of Royal B. Hovey, a nephew, to the office of trustee upon certain contingencies. The third

clause also deals with the number of trustees deemed "sufficient." The fourth clause appoints the wife as guardian of the son and names the executors. The crucial provisions of the second clause are as follows:

"Second: I give, devise and bequeath all the rest and remainder of my property of all kinds, whatsoever, real, personal and mixed, and wherever situated, unto my dear wife, Stella LaZelle Barnhart, and my nephews, Maurice W. Barnhart and E. Warren Conable, as Trustees, and in trust for and upon the following terms, trusts and conditions, to-wit: * * *

"(d) If my said son, Arthur M. Barnhart, shall survive my said wife, Stella LaZelle Barnhart, then immediately upon the death of my said wife, three-quarters ($\frac{3}{4}$) of all of the trust estate and property then remaining in the hands of the Trustees hereunder shall be turned over and go to my said son in absolute ownership, and the other one-quarter ($\frac{1}{4}$) of said trust estate shall remain in trust hereunder during the life of my said son and until his death, and the income therefrom shall be paid over to him in quarter-yearly installments during his life and at his death all the remainder of the trust property shall be turned over and go, in absolute ownership, to the issue of his body, if such issue there be in life surviving him, and if there be no such issue surviving him, then to my heirs at law under the Statutes of Descent of the State of Illinois; and if my said son shall not survive my said wife, Stella LaZelle Barnhart, then at her death all of the trust property remaining in the hands of the Trustees hereunder shall be turned over and go, in absolute ownership, to the issue of my said son, taking per stirpes, if there be such issue in life, and if not, then to my heirs at law under the Statutes of Descent of the State of Illinois. All payments under this will provided to be made to the beneficiaries shall be made in quarter-yearly installments; for the sake of clearness it is hereby stated, and it is my will, that all of the trusts created by this will shall terminate and be at end and the trust property be all turned over out of trust forthwith upon the death of the last survivor of my said wife and son."

Since Arthur M. Barnhart, Jr., the son of the testator, died prior to the wife without leaving any issue surviving him, the contingencies mentioned in the latter portion of paragraph (d) of clause 2 of the will have occurred. The decision of the controversy between the parties therefore depends upon the proper construction of that portion of the will which provides that upon the happening of these

events the trust property is to go "to my heirs at law under the Statutes of Descent of the State of Illinois." Appellant, Stella LaZelle Barnhart, contends that these words mean those persons and only those persons who answered the description of heirs-at-law of the testator at the time of his death, that is, his wife and his son. By virtue of such a construction, she claims both the entire income and principal of the trust estate either as the only survivor who answers the description of "heir" or as the sole heir of her deceased son, the other person fitting the description of "heir" at the time of testator's death. Appellees contend that the words of the will mean those persons who will be the heirs-at-law of the testator at the termination of the life estates, *i.e.,* upon the death of the widow, and that the heirs-at-law of the testator are to be determined as of that later time rather than at the time of his death.

In construing a will the question for determination by the court is not what the testator meant to say but rather what he meant by what he did say. The primary rule of construction is that the intention of the testator as expressed in his will governs the distribution of his estate. The intention of the testator, once it has been ascertained, will be given full effect unless to do so would violate some settled rule of law or be contrary to public policy. (*Vollmer* v. *McGowan,* 409 Ill. 306; *Storkan* v. *Ziska,* 406 Ill. 259; *Walker* v. *Walker,* 283 Ill. 11.) All rules of construction yield to the intention of the testator as expressed in the will. (*Harris Trust & Savings Bank* v. *Jackson,* 412 Ill. 261.) No rule of construction will be applied to defeat that intention. Effect must be given to the whole will. The testator's intention cannot be determined from the language of any particular clause, phrase or sentence. (*Lydick* v. *Tate,* 380 Ill. 616; *Papa* v. *Papa,* 377 Ill. 316.) Because, as we have often noted, no two wills are ever exactly alike, precedents in other will cases are never of controlling importance in determining the intention of the testator as

expressed in the particular will under consideration. *Geiger v. Geer,* 395 Ill. 367; *Cahill* v. *Michael,* 381 Ill. 395.

We believe that the will of Arthur M. Barnhart, Sr., clearly expresses his intention that his heirs are to be ascertained at a time other than at the time of his death and at a time when the immediate members of his family, *i.e.,* his wife, his son and his son's issue, if any, had all died. There are several compelling reasons for this conclusion. The testator repeatedly and throughout the will limits the interest of his wife to the receipt of income from the trust estate though there are contingencies referred to in the will upon the happening of which he might have given his wife an interest in the *corpus* had he intended that result. Such a contingency was the death of the son before the wife without issue and the death of such issue, if any came into existence, before the widow's death. Testator foresaw the contingency which actually did happen (*i.e.,* the death of the son before his wife without leaving issue surviving him) and clearly provides that upon the happening of such contingency the wife's interest shall be the right to receive income from the trust until her death. The testator specifically provides for his immediate family, his son and his wife (always referring to them and designating them as such) and for all his lineal descendants, even to remote generations, and only when, by the terms of the will, provisions made for them therein could not take effect, did he make any distribution of his property to his "heirs at law." It thus appears that the class of heirs to take after the deaths of his wife, child and issue of his child, if any, shall be composed of persons different from his wife, child or child's issue. The testator gives his son three fourths of the *corpus* of the trust estate, if, but only if, he survives the widow. It appears clear, therefore, that the testator never intended that his son should be considered to be within the class of heirs-at-law who were to share the *corpus* of the trust upon the happening of the contingencies

present, because he would not reasonably intend that his son take a greater interest in the *corpus* of the estate if he did not survive the widow than he would take if he did survive her. Moreover, the testator specifically provides for the continuance of the trust estate after the death of the son without leaving issue surviving him. The concluding words of paragraph (d) of the second clause of the will are: "All payments under this will provided to be made to the beneficiaries shall be made in quarter-yearly installments; for the sake of clearness it is hereby stated, and it is my will, that all of the trusts created by this will shall terminate and be at end and the trust property be all turned over out of trust forthwith upon the death of the last survivor of my said wife and son." If testator's intention was, as the widow suggests, to give her the entire income and the *corpus* of the trust as well, no reason for the continuance of the trust after the son's death without issue could possibly be conceived. Yet such are the clear provisions of the will. The testator made it perfectly plain that he wished this property to repose and be protected by the trust as long as either his son or his wife should be alive.

The evidence concerning the circumstances surrounding the testator at the time he made his will support our conclusion as to the intention of the testator expressed in the will itself. Appellant has stressed the evidence concerning the creation of the *inter vivos* trusts for his collateral relatives as indicative of the fact that testator was doing all he intended to do for them. She concludes that because he went to such lengths to provide for them by the gifts in trust, he did not intend that they should take as heirs-at-law under his will. The entire circumstances revealed by the evidence show that while testator had a very real affection and concern for his wife and child, he also had great pride of family and a deep sense of obligation to his brothers and sisters and their descendants. We believe that the will and all surrounding circumstances show that the

testator wanted to provide adequately for his wife, his son and the descendants of the son even to remote generations, but that upon failure of the line of descent, his own family, rather than strangers, should have his property. The fact that he showed such affection and concern for his brothers and sisters, nieces and nephews by creating the trusts for them supports rather than negatives the proposition that testator intended that they should take under his will. Certain letters written by the testator to various of his relatives were introduced at the trial over objection. None of these, in our opinion, shows any intention on the part of the testator that his heirs are to be determined as of the date of his death. We regard them as unimportant, and in view of the fact that they have not influenced this opinion one way or the other, we find it unnecessary to pass upon the objections raised to their admissibility.

Having determined that it was the clearly expressed intention of the testator that his heirs-at-law should not be determined as of the date of his death, the question remains: Is there any settled rule of law which will prevent giving effect to this intention? In construing a will, the law existing at the time of its execution or as of the date of the testator's death must govern, whether that law be founded upon statute or judicial decision. (*Belfield* v. *Findlay,* 389 Ill. 526; *Wallace* v. *Noland,* 246 Ill. 535.) At the time the testator executed his will this court had held that ordinarily the words "heirs at law" when used in a will are words used to designate those persons who answer this description at the death of the testator, and such will be the construction unless the intention of the testator to refer to those who shall be his heirs at a period subsequent to his death is plainly manifested in the will. We had also held that this rule might operate notwithstanding the fact that a life estate may precede the bequest to the heirs-at-law or that the life tenant, upon the expiration of whose estate the distribution was to be made, was her-

self one of the heirs-at-law, and this whether the heirs-at-law determined as of the time of the testator's death be living or dead when the time for distribution arrived. (*Kellett* v. *Shepard,* 139 Ill. 433.) But we had also held that where there was a gift to a person for life, with remainder to the testator's heirs, and the person taking the life estate was the sole heir at the date of the death of the testator, the remainder will be considered as given to the persons answering the description at the termination of the life estate, when such appeared to be the intention of the testator from the entire scope and plan of the will. (*Johnson* v. *Askey,* 190 Ill. 58.) There was, therefore, at the time Arthur M. Barnhart, Sr., made his will no positive rule of law which prevented the words "heirs at law" of the testator from being construed to mean those persons who would be his heirs-at-law at the termination of the life estate.

Appellant, Stella LaZelle Barnhart, relies most strongly upon the decisions of this court in the cases of *Himmel* v. *Himmel,* 294 Ill. 557, *Hull* v. *Adams,* 399 Ill. 347, and *Le Sourd* v. *Leinweber,* 412 Ill. 100. We have examined these cases with considerable care and find that the wills construed are not similar to that in the case at bar. As stated previously, precedents in other will cases are never too valuable because of the dissimilarity of the wills involved. (*Geiger* v. *Geer,* 395 Ill. 367.) In each of the above cases relied upon by appellant the term "heirs" was held to mean "heirs" at the time of the testator's death but the rule is consistently recognized that where the intention of the testator to refer to those who would have been his heirs had he died at a subsequent time is clearly manifest by the language used in the will, such intention will be given effect. Thus in *Hull* v. *Adams,* 399 Ill. 347, 352, 356, it is said: "But, as pointed out in all of the cases above cited, a devise to the testator's heirs will not be construed as meaning a devise to those who are his heirs at

the time of his death, although such construction would be *prima facie* correct, if it appears from the will, construed as a whole and with reference to all its provisions, that the testator used the words in an artificial sense as referring to those persons who would have been his heirs had he lived until some future time or until the happening of some subsequent event. While the general rule is that the heirs of a testator mentioned in the will are to be ascertained as of the time of his death, yet this is merely a rule of construction and gives way to a contrary intent to be found in the will." "The fact that the life tenant is the sole heir of the testator does not, of itself, establish that the testator used the word to indicate those who would be his heirs had he died at the termination of the life estate, but such fact may be considered, along with other facts, in determining the intent of the testator as to the time when his heirs are to be ascertained." Similar language appears in *Le Sourd* v. *Leinweber,* 412 Ill. 100, 105.

The case of *Himmel* v. *Himmel,* 294 Ill. 557, merely holds that there is no substantive rule of law where the life tenant is the sole heir-at-law of the testator that he is excluded from the remainder where those who are his heirs are to be ascertained at the termination of the life estate. That decision does, however, recognize that such fact may be a material factor in ascertaining the testator's intention and the case does not purport to overrule *Johnson* v. *Askey,* 190 Ill. 58. At page 566 of the opinion in the *Himmel case,* it is said: "It is clear that the statement made in *Johnson* v. *Askey, supra,* in connection with the cases cited and the provisions of the will under consideration, cannot be taken as a substantive and positive rule of law controlling and overcoming the intention of the testator upon a consideration of the whole will and all its provisions, but the fact that the life tenant is the sole heir is to be considered in determining the nature of the remainder and the time when the heirs-at-law are to be ascertained."

No Illinois cases have been cited by counsel for either side involving trusts like or nearly like that found in the will now under consideration. Courts in other States have held, however, in situations where similar trusts were involved and under wills having similar dispositive provisions that a gift to "heirs at law" following provisions for the testator's immediate family and all of his lineal descendants must be construed as intending that such "heirs at law" are to be determined as of the date of the termination of the trust and not as of the date of death of the testator. See: *Boston Safe Deposit and Trust Co.* v. *Blanchard,* 196 Mass. 35, 81 N.E. 654; *New York Life Insurance & Trust Co.* v. *Winthrop,* 237 N.Y. 93, 142 N.E. 431, and *Carter* v. *Martin,* 124 N.J. Eq. 106, 199 Atl. 589.

Counsel have discussed at length the question whether in any event the widow could be considered an heir-at-law of the testator under the law as it existed at the time the will was drawn, stressing the fact that the Statutes of Descent and Distribution in effect in Illinois at that time were different from the present laws. In view of the conclusion we have reached, based upon our conception of the clear meaning of the will, it becomes unnecessary to consider this point. We hold that the trial court correctly construed the last portion of the will to mean those persons who would constitute the heirs-at-law of the testator under the Statutes of Descent of the State of Illinois at the death of the widow and determined at that time; that the said collateral relatives will be entitled to the remainder of said estate if they survive the widow, provided, however, that if any of them fail to survive, then the persons entitled to the principal of the trust estate will be those who at the date of the death of the life beneficiary will be the heirs-at-law of the testator under the Statutes of Descent of the State of Illinois determined as of that time. Appellees, Gracia M. F. Barnhart *et al.* have abandoned their contention that they are entitled to the *corpus* of the estate to

the exclusion of the relatives of the half blood and we find that the ruling of the trial court that the collateral relatives of the half blood should take on the same basis as those of the full blood was correct.

The trial court found that a vacancy existed among the trustees of the will because of the death of N. Florence LaZelle and appointed Morgan L. Fitch a successor-trustee to fill the vacancy. Appellant, Stella LaZelle Barnhart, individually and as administratrix, says that there was no vacancy in the trusteeship and no occasion for the appointment of a successor-trustee. It is also contended that the court erred in declining a request to appoint a successor-trustee acceptable to the other trustees and to Stella LaZelle Barnhart as life beneficiary, but no objection has been made to the character, fitness or qualifications of the trustee appointed.

The third article of the will of the testator provides that three trustees shall constitute a "sufficient" board of trustees under the will; that if, by reason of the addition of his son to the board, the board be increased to four, and thereafter it be reduced to three, it shall not be necessary to appoint a successor to constitute a board of four, the intent being that a board of three shall be sufficient. By paragraph (a) of the second clause of his will, testator mentions the trustees and "their successors." He provides that none of the trustees or the successors named in the instrument shall be required to give bond, but "in case any Trustee be appointed by any Court to act hereunder" that a bond be given by such appointee. We believe that the will of the testator, taking all of its provisions together, contemplates that the trust shall be administered by a board of three trustees. The will mentions trustees and "their successors." The definite inference from the fact that the provision is that no successor need be appointed if the board be reduced from four to three, is that the

testator means that one be appointed if the board be reduced to less than three, for three is the figure he has definitely in mind since he names three trustees in the first instance and states that a board of three trustees shall be sufficient. We believe the testator intended that there should at all times be a board of three trustees. Appellant cites the case of *Mullanny* v. *Nangle,* 212 Ill. 247, as authority for her position, but the will there involved was entirely different. The conveyance was to two trustees "or the survivor" of them and the court held that by so doing the testator showed that he did not intend that there should always be two acting trustees.

Since by his will the testator manifests an intention that there should be a board of three trustees, a vacancy existed and an appointment was required. That appointment will not be disturbed in the absence of a showing of abuse of discretion by the trial court in making it. None appearing, that part of the decree finding the vacancy and making the appointment should be affirmed.

The court declined to order an allowance of attorneys' fees to the various parties to be taxed and paid out of the *corpus* of the estate. It is true that the action before us involved an accounting for the purpose of establishing plaintiffs' rights in the trust property. The right to an accounting, however, depended entirely upon a construction of the will. Unless that question was determined in favor of the plaintiffs, there was obviously no right to an accounting. On that question there was a determined contest and there were adverse claims over the disposition of the *corpus* of the estate at the termination of the trust period. Because of the ambiguous and uncertain terms of the will, it required construction by a court of equity to determine which of the several adverse claimants were entitled to share in the balance of the estate. We are of the opinion that the facts reported in this record justify the attorneys' fees being

taxed against and paid by the estate. (*In re Estate of Reeve,* 393 Ill. 272.) In declining to so order, the decree in this respect is reversed.

In the final paragraph of its decree the trial court reserves jurisdiction to grant plaintiffs and the half-blood defendants an accounting if, upon the hearing of the cause before the master, it shall be proved that the defendant trustees have been guilty of waste or mismanagement in their administration of the trust estate, the inference being, of course, that such relief will not be granted unless such a showing is made. Plaintiffs and collateral relatives of the half blood have assigned error to this part of the decree. The nature of the interest of the collateral relatives is that of contingent remaindermen. This has been recognized by all of counsel in their respective briefs and arguments. The question for decision is, therefore, whether a contingent remainderman by virtue of being such or after demand is entitled to an accounting as a matter of right without any showing of mismanagement or of facts giving rise to an inference of waste or that a property right under the trust is being dissipated.

No authorities have been cited by counsel holding that one who has a contingent interest in trust property may demand an accounting as a matter of right. Several cases from other jurisdictions have been cited which hold that the owner of a contingent interest may have equitable relief to prevent waste or dissipation of the trust estate or to prevent disposition of the trust property contrary to the intention of the trustor. (See: *Northwestern Nat. Bank and Trust Co.* v. *Pirich,* 215 Minn. 313, 9 N.W. 2d 773; *Roberts* v. *Michigan Trust Co.* 273 Mich. 91, 262 N.W. 744.) No cases going any further than these in affording relief to a contingent remainderman have been called to our attention and the court in the *Pirich case* recognizes that there are authorities holding that one having a contingent interest may not have an action against a trustee.

Section 50 of the Illinois Chancery Act (Ill. Rev. Stat. 1951, chap. 22, par. 50,) provides in substance that where any estate is subject to a contingent future interest, legal or equitable, arising by way of remainder or otherwise, and whether a trust is involved or not, it may be brought under the jurisdiction of a court of equity and a trustee appointed whenever it is made to appear that such estate is liable to waste or depreciation in value.

In 65 C.J. (Trusts,) paragraph 780, at page 882, it is said: "Contingent or reversionary interest as basis of right. By statute in a number of jurisdictions the right to require an accounting is expressly recognized as appertaining, more or less generally, to persons possessing an interest contingent in nature; and, apart from any statute, trustees may be required to account, it has been held, at the instance not only of the *cestui que trust* or of those having a vested or even a contingent interest therein, but also, in a proper case, by those having an estate in reversion; however, a person only contingently interested has no standing to require an accounting without showing some mismanagement or other facts giving rise to an inference of waste or that a property right under the trust is likely to be dissipated or wasted."

We believe the better rule to be that while a contingent remainderman should not be denied the right to bring an action against the trustees regardless of circumstances and merely because his interest is remote and contingent, nevertheless, the scope of the right should be limited to that which is necessary to protect his possible eventual interest, *i.e.*, the protection and preservation of the trust *res*. It should be afforded only where waste, mismanagement or dissipation of assets appear or can be shown. We hold, therefore, that the final paragraph of the decree was correct.

Finally, error has been assigned upon the trial court's order assessing nine tenths of the costs against Stella LaZelle Barnhart individually and one tenth of the costs

324

against plaintiffs. The assessment of costs is a matter largely within the sound judicial discretion of the chancellor. His order will not be disturbed unless abuse of that discretion is shown. In view of the history of this litigation, the circumstances appearing and the outcome of this case, we find that the assessment of costs was just and equitable. The court's order in that regard should be affirmed.

The decree of the circuit court of Cook County is affirmed in part and reversed in part, and the cause is remanded, with directions to enter a decree in accordance with the views herein expressed.

*Affirmed in part and reversed in part and remanded, with directions.*