(No. 32845.— )

WALTER E. SLOAN *et al.*, Appellants, *vs.* GEORGE L. BEATTY *et al.*, Appellees.

*Opinion filed November 18, 1953—Rehearing denied Jan. 18, 1954.*

582

Busch & Harrington, of Champaign, and John M. Mitchem, of Urbana, for appellants.

Thomas & Mulliken, of Champaign, (John F. McKinzie, of counsel,) for appellees.

Mr. Justice Fulton delivered the opinion of the court:

Appellant Walter E. Sloan and Guy F. Beatty filed their complaint in the circuit court of Champaign County seeking a construction of certain provisions of the last will and testament and codicil of Calvin Beatty, deceased, the determination of the rights and interests of the parties in an 80-acre tract of land located in that county, and partition of the real estate according to the respective rights and interests as determined by the court. During the pendency of the proceedings, George L. Beatty, one of the defendants, died, and by order of court the executor of his will and the beneficiaries thereof were substituted as parties defendant. The answer of George L. Beatty was allowed to stand as their answer and the title of the cause remained unchanged. Walter E. Sloan, one of the plaintiffs, and certain of the defendants have appealed from a

decree of the trial court denying partition and finding that an absolute fee-simple title to the land in question was vested in George L. Beatty, alone, at the time of his death; that therefore the substituted parties as devisees of his will were the only persons entitled. Since a freehold is involved, the appeal has been brought directly to this court.

Calvin Beatty died testate on May 15, 1922, in Champaign County, Illinois. His last will and testament, dated February 26, 1903, and a codicil thereto, dated June 9, 1910, were admitted to probate in the county court of Champaign County. Administration was had in his estate and duly completed. The will, in the testator's own handwriting, after providing for the payment of lawful debts, disposes of the entire residue as follows:

"To my beloved wife all the land and appurtenances situated thereon known and described as the Calvin Beatty Farm lying in the Town of Newcomb in the County of Champaign and State of Illinois also all stalk or shares or money of any kind that I may hold and now possessed by me during the term of her natural life and after her death to be divided as followes George L. Beatty my son to have the eighty he now resides on it being the west half of the south west quarter in Section (5) Town 21 Range 7 State of Ill, also my Daughter Lillian Beatty Sloan to have 80 acres where she has lived down at the Church it being the west half of the South east quarter of Section five town 21 Range 7 Champaign Co State of Ill, & My Daughter Lulu Beatty Williams to have the 80 acres where we now live being the East half of the North West quarter of Section (5) Town 21 Range 7 Illinois and my Daughter Sadie Beatty Hoyt to have 80 acres the East Half of the South west quarter of Section five Town 21 Ill and my Daug. Hattie Beatty to have the West half of the North East quarter Section (5) Town 21—Range Seven State of Illinois and My Adopted Son Guy F. Beatty to have for his Share $2100 twenty one hundred dollars in money this amount if not on hand after My Wife Ella McKinney Beatty Deatth and all her lawful debts Paid in consideration of the bequest of land to My five Children George Lillian Lulu Sadie & Hattie and as there is now a Mortgagues on a portion of this land witch may not be paye at My Wifes Death then the indebteness shall be Equally essesed to to Each Eighty on the five Eighties to pay of Shuch indebtedness also to Raise the 21 twenty one hundred for Guy F. Beatty or if Providence Should favor us so we can pay all Indebtiness then all moneys after evry

thing is esttled if there should be any left to be Equaly devideed among all the Children x Guy F. Beatty to have an equal share of surplus whatever that may be And if any of Children Shall not be Satisfide with this will & undertake to make trouble or go to Law then their share shall be taken away and Equaly devided among the rest of the famley"

The codicil, likewise in testator's handwriting, provides:

"This is a codicil to my will made in the year of our Lord 26 days of Feb. 1903 and whereas I did bequath to G. L. Beatty One Eighty acres of land I now think it Prudent to Intale it to his children after his Death to go to his children also Lillie Beatty Sloan Hers to be Intailed to her children that is the Eighty acres that she gets by the will also Lulu G. Beatty Williams The Eighty acres she gets I intail it to her Children after he Death Also Sadie Beatty Hoyt the Eighty acres She gets by the will I entail to Children at her death also Hattie Beatty Robinett the eighty acres she gets by the will I intail to her children at her death Now in case their children do not live unto their death of their Parants then it to go to the next nearest of kin, the rest of the sirplus prop-'erty to be devided as the firs will states This is to make it so neither of my children can sell the land that I have willed them hereunto I set my hand and Seal this 9th day of June 1910"

At the time of his death Calvin Beatty left him surviving his widow, the five blood children named in the will and codocil, and his adopted son, Guy F. Beatty. His widow, Ella Beatty, died on November 1, 1925, intestate, leaving her surviving as her only heirs-at-law her five blood children and her adopted son named in the instruments. Hattie Beatty Robinett, one of the children, died on February 2, 1930, intestate, leaving her surviving as her sole and only heirs-at-law her husband, Howard Robinett, and her children, Lyle Robinett, Nile Dean Robinett, Ellen Robinett Ball, Louise Robinett Hepplewhite and Dorothy Robinett Winnans. Howard Robinett, the surviving spouse of Hattie Beatty Robinett, died intestate on March 8, 1944, leaving him surviving as his only heirs-at-law the five children last named. All of these children were named as parties defendant in this proceeding. Lillian Beatty Sloan,

another of the children of the testator, died on March 18, 1944, intestate, leaving her surviving as her only heirs-at-law her two children, Walter E. Sloan, one of the plaintiffs, and Ada Marie Sloan Duncan, a defendant. Lulu Beatty Williams died intestate in 1949, leaving as her only heirs-at-law her children Loren Williams and Albertine Gibson, both named as defendants. Sadie Beatty Hoyt, also known as Sarah Beatty Hoyt, another of the children of Calvin Beatty named in his will and codicil, died testate on March 5, 1952. She left no child or children or descendants thereof surviving her. She had had one child, a daughter, Josephine Cook, who died childless in 1944. By her will admitted to probate in the county court of Champaign County, Mrs. Hoyt, after disposing of a joint bank account, gives all the residue of her property to Walter E. Sloan, Ada Marie Sloan Duncan, Lyle Robinett, Nile Dean Robinett, Ellen Robinett Ball, Louise Robinett Hepplewhite and Dorothy Robinett Winnan, her nephews and nieces, equally share and share alike. Thus, the only children of Calvin Beatty living at the time of the commencement of this action were his son George L. Beatty and his adopted son Guy F. Beatty. All of the deceased children of the testator except Sadie Beatty Hoyt left children surviving them. The question before us concerns only the title to the 80-acre tract devised to Sadie Beatty Hoyt in the will and codicil of her father. Upon the death of Sadie Beatty Hoyt, without children or their descendants, did title to this land vest in George L. Beatty, alone, as the chancellor found, or did it vest in George L. Beatty and all the children of his deceased sisters, as appellants contend? The answer to this question involves the true and proper construction of the will and codicil of Calvin Beatty.

Counsel for both sides agree that the will and codicil are uncertain and ambiguous and require construction. The particular words about which the dispute centers are those words of the codicil ". . . Now in case their children do not

live unto their death of their Parants then it to go to the next nearest of kin. . . ." The question to be decided is: Upon the death of Sadie Beatty Hoyt without child or children surviving her what person or persons answer the description "the next nearest of kin" and take the fee interest in the 80-acre tract. In their original complaint, it was the contention of plaintiffs that these words mean the heirs-at-law of Calvin Beatty or, in the alternative, the heirs-at-law of Sadie Beatty Hoyt. By their answer, certain of the defendants, the children of Hattie Beatty Robinett, allege that the words referred to mean the heirs-at-law of the devisee, Sadie Beatty Hoyt, but by their amended answer these same parties claimed that the words meant the nearest blood relatives of the testator, Calvin Beatty, living at his death. The latter construction seems to be that now preferred by all of appellants, whether originally plaintiff or defendant, and regardless of the earlier positions taken, for in their reply brief counsel state that it is their contention that this phrase refers to "the nearest blood relatives of Calvin Beatty at the time of his death." Counsel for appellees take the position that the words mean the nearest blood relatives of Sadie Beatty Hoyt or, in the alternative, the nearest blood relatives of Calvin Beatty living at the time of Sadie Beatty Hoyt's death, and that George L. Beatty was the only person answering that description. Both the master, to whom the cause was referred, and the chancellor have sustained the latter conclusion.

Before considering the questions of construction raised on this appeal it might be well to point out that there has been no disagreement about the general effect of the codicil so far as the interests created in the children and their descendants are concerned. Testator by his will gave each of his children a separate 80 acres of land in fee simple, following life estates to his widow. By his codicil these were changed to fee tail estates and therefore by operation of the Conveyances Act (Ill. Rev. Stat. 1951, chap. 30,

par. 5,) each child had a life estate, followed by a remainder
in fee simple absolute to the person or persons to whom
the estate tail would, on the death of the first devisee in tail,
first pass. The effect of the entail statute, as decided by
this court, is that upon the death of the testator the re-
mainder limited after the life estate in the first devisee
vested in any child or children of the first devisee then in
being, subject to open up afterward to let in after-born
children. This vested remainder could not be defeated by
the.death of the remainderman, in the absence of an execu-
tory devise over limited upon such contingency. (*Beasley*
v. *Beasley,* 404 Ill. 225; *Stearns* v. *Curry,* 306 Ill. 94.)
The limitation over to the "next nearest of kin" in the
codicil of Calvin Beatty is an executory devise limited after
a vested remainder in fee. It would operate to divest the
vested remainder upon the happening of a future event,
namely upon the death of the first devisee without child or
children surviving her. (*Hickox* v. *Klaholt,* 291 Ill. 544.)
Thus Sadie Beatty Hoyt, upon the death of her father,
received a life interest in the tract in question following
the life estate to her mother with a vested remainder in
her daughter, Josephine Cook, subject to open to let in
after-born children, with an executory devise to the "next
nearest of kin" upon the death of Sadie Beatty Hoyt with-
out child or children surviving.

The usual and customary meaning of the words "next
nearest of kin" is the nearest blood relatives of the person
referred to. In *Hammond* v. *Myers,* 292 Ill. 270, this court
considered the provisions of a will in which the testator
devised land to his son "to have and to hold the same during
his natural life, for his support and maintenance during
his natural life. After his death to revert to his nearest
akin." The son died leaving no widow, parent or child
surviving him, but left surviving a brother, a sister and
seven nieces and five nephews, who were children of de-
ceased sisters. The sister contended that only she and her

brother answered the description of "nearest akin" under the provisions of the will, but the trial court ordered distribution among all the legal heirs of the deceased in accordance with the Statute of Descent. This court reversed the order of the chancellor, holding that the words meant the nearest blood relatives rather than those generally who would take under the Statute of Descent; that the sister and brother were nearer blood relations than a niece or nephew and so took to the exclusion of the latter. In the *Hammond case* we considered authorities from other jurisdictions involving similar provisions, and noted that other courts of last resort had reached the same conclusion. See in accord: *Swazey* v. *Jaques,* 144 Mass. 135, 10 N.E. 758; *Leonard* v. *Haworth,* 171 Mass. 496, 51 N.E. 7. In *Clark* v. *Mack,* 161 Mich. 545, 126 N.W. 632, the court, in considering a provision for "next of kin," held that in the absence of a contrary intent, the words meant the nearest of kin in the strictest sense, excluding persons who, under the Statute of Descent, would be entitled to take by representation, observing that the words themselves excluded the idea that anyone was to take by representation. We believe that there can be no distinction between the words "the next nearest of kin" used in the codicil to the will of Calvin Beatty and the words "nearest akin" considered in *Hammand* v. *Myers.* The use of the word "next" in addition to the word "nearest" can only strengthen the inference that only the nearest blood relations are meant.

Since the natural and customary meaning of the words used is nearest blood relations, they will be given that meaning by the court unless there is such an impracticability of so construing them as to authorize their rejection, or such uncertainty that no effect can be given to them in that sense. (*Blackmore* v. *Blackmore,* 187 Ill. 102.) There is no such uncertainty in the meaning of the words here used that no effect can be given to them, nor is it impracticable so to construe them. Indeed, their natural and cus-

tomary meaning is in accord with the provisions of the will and codicil whereby the blood children were given the Beatty land and the adopted child only a monetary legacy. Viewing the provisions of the will and codicil as a whole, it is only reasonable to believe that the testator had nearest blood relations in mind rather than those who would take under the Statute of Descent when he used the words "next nearest of kin."

But the questions remain: Whose blood relations are referred to? If the words used refer to the nearest blood relatives of Calvin Beatty, rather than the nearest blood relatives of the life tenant, Sadie Beatty Hoyt, as of what time are the substitutionary takers to be determined? As of the date of the death of Calvin Beatty or as of the date of the death of Sadie Beatty Hoyt? If the provisions of the codicil are interpreted to mean the nearest blood relatives of the life tenant, Sadie Beatty Hoyt, no problem of ascertainment of time exists, and George L. Beatty, her brother, as her nearest blood relative, would take to the exclusion of the nieces and nephews under the authority of *Hammond* v. *Myers*. But if the provisions of the codicil refer to the nearest blood relatives of the testator, the problem of time becomes important and we have the question when they are to be ascertained.

The testator does not supply the limitation to the "next nearest of kin" with any possessive pronoun such as "my," "her" or "their." However, the court below decided that the words referred to the nearest blood relatives of the testator. Since the other construction would have been conclusive of the rights of appellants without further consideration, for reasons already indicated, we, for the purposes of argument at least, adopt that view, while observing that it may be open to question. As of what time, then, are the nearest blood relations of the testator to be determined?

The paramount rule of testamentary construction is that the intention of the testator as expressed in his will governs

the distribution of his estate, and the intention of the testator, once it has been ascertained, will be given effect unless to do so would violate some settled rule of law or would be contrary to public policy. (*Barnhart* v. *Barnhart,* 415 Ill. 303.) All rules of construction yield to the intention of the testator as expressed in the will and no rule of construction will be applied to defeat that intention. (*Harris Trust & Savings Bank* v. *Jackson,* 412 Ill. 261.) Effect must be given to the whole will and the testator's intention cannot be determined from the language of any particular clause, phrase or sentence. (*Monarski* v. *Greb,* 407 Ill. 281; *Lydick* v. *Tate,* 380 Ill. 616.) There is always also the word of caution that since no two wills are ever exactly alike, the precedents in other will cases are never of controlling importance in determining the intention of the testator as expressed in the particular will under consideration. *Barnhart* v. *Barnhart,* 415 Ill. 303.

Under these controlling principles, and assuming that the words refer to the nearest blood relations of Calvin Beatty, we believe that the language of the will and codicil shows a clearly expressed intention that his nearest blood relations are to be determined at the time of the happening of an event subsequent to the date of his death, *i.e.,* the death of the life tenant of the particular tract of land and the failure of issue to survive that event. The gift is to the "next nearest of kin," if and only if the children of the life tenant "do not live unto their death of their Parants." We do not believe that the testator could have intended the membership of the class to be fixed before it could be determined that there should be a devise to them. By his will and codicil testator gave to each of his blood children a life interest in a particular 80 acres of land, with remainder to his children, specifically providing that "This is to make it so Neither of my children can sell the land which I have willed them. . . ." This indicates that he did not want any remainder or executory interest to vest in

his children at his death. It does not seem likely that testator intended to give to Sadie Beatty Hoyt a part of what was devised to her children after her life estate, for had he so intended, a direct devise to her such as he had first made in his original will would have accomplished the result. The words used indicate that testator was looking forward to the time when the particular child should die, and show that testator contemplated the possible existence of a group of persons of unequal degrees of relationship, expressly declaring that the nearest should take to the exclusion of the others. The language used repels the idea that he was thinking of his children, all of whom were of an equal degree of relationship to him. If the testator intended to give a vested interest to his children at his death, subject to life estates in them, and limited upon their death without children surviving, the use of the words "next nearest of kin" would be meaningless, as counsel for appellees have aptly observed.

It further appears that testator uses the word "then" in the substitutionary gift as an adverb of time referring to the death of Sadie Beatty Hoyt. While the word may be used as a word of reference it may also be used as an adverb of time. (*Strain* v. *Sweeny,* 163 Ill. 603.) As stated in that decision, when employed as a particle of reference it generally follows a clause beginning with the word "if." But where the clause which precedes it begins with the words "in case," it is given its meaning as an adverb of time, because to construe it as meaning "in that case" would be a mere repetition of the same expression. The words used in this codicil are "now in case the children do not live unto their death of their Parants then it to go to the next nearest of kin. . . ." The case last cited is direct authority for the proposition that the word "then" as used by Calvin Beatty is an adverb of time. The cases cited by appellants to the contrary are distinguishable. Thus, in *Himmel* v. *Himmel,* 294 Ill. 557, the word "then" was preceded by "if." In

*People* v. *Camp,* 286 Ill. 511, the words "then and in such case" were used. In *Tolley* v. *Wilson,* 371 Ill. 124, the words were "then in such case." In those situations the word "then" would, of course, be construed to mean "in that case" as a word of reference and not "at that time" as a word of time. We recognize that *Strain* v. *Sweeny* is not alone to be considered controlling of the question now under discussion. As previously stated, no mere rule of construction can operate to defeat the intention of the testator as expressed in the whole will. However, the rule of construction announced in *Strain* v. *Sweeney* does reinforce our findings as to the intention of the testator as revealed by the language and general scope and plan of his will and codicil as heretofore discussed.

Appellants contend that there is a rule of construction requiring a person's next nearest of kin to be determined as of the date of his death, in the absence of a clear intent to the contrary. They have cited *Kellett* v. *Shepard,* 139 Ill. 433, *People* v. *Camp,* 286 Ill. 511, and *Wilcox* v. *Bierd,* 330 Ill. 571. None of these cases involves a testamentary limitation to "next nearest of kin." In *Kellett* v. *Shepard,* a testator provided that in the event of his daughter's death without issue the property was "to go to and descend in reversion to my heirs at law." This court applied the rule that ordinarily, when used in a will, the words "heirs at law" designate those persons who answer that description on the death of the testator unless there is a clearly expressed intention to the contrary, and held that this rule would operate notwithstanding that a life estate may precede the bequest to the heirs-at-law, or that the life tenant, upon the expiration of whose estate the distribution was to be made, was herself one of the heirs-at-law and whether the heirs-at-law determined as of the time of testator's death be living or dead when the time for distribution arrived. In *People* v. *Camp* testatrix provided that her "estate shall be distributed according to law and the rules

of descent as provided by the State of Illinois." We held that the clause meant that the property should be distributed to her heirs-at-law and next of kin according to our Statute of Descent as in case of intestacy because, if distributed according to the laws of descent in Illinois, it could go to none other than her heirs-at-law and next of kin. *Wilcox v. Bierd* involved an action brought under the Wrongful Death Act and the definition of the term "next of kin" as used in that statute. We held that the Statute of Descent must be looked to to determine the beneficiaries for whom the personal representative brings the wrongful death action, since it expressly provides for distribution as if intestate. The case involved no question as to the time at which the beneficiaries are to be determined and, as observed in *Hammond v. Myers,* 292 Ill. 270, cases involving the interpretation of these words in the Wrongful Death Act furnish no guide to a determination of the meaning of the words "next of kin" in a testamentary disposition, because the phrase as used in the statute is a technical phrase used by the legislature in its technical sense.

Therefore, none of the cases cited by appellants is authority for the proposition that "next nearest of kin" must be determined as of the date of the death of the testator and, though presumptively the words "heirs at law" refer to heirs-at-law determined as of the date of the death of the testator, (*Kellett v. Sheppard,* 139 Ill. 433,) the rule will not be applied to defeat the intention of the testator when the contrary appears from the entire scope and plan of the will. (*Barnhart v. Barnhart,* 415 Ill. 303; *Hull v. Adams,* 399 Ill. 347; *Johnson v. Askey,* 190 Ill. 58.) The cases involving a limitation to "heirs at law" are not in point here and, even if they were, the rule they establish never operates to defeat the intention of the testator, since it is a rule of construction, only. We have examined the cases from other jurisdictions cited by appellants and find that none of the cases involves a will similar

594

in its provisions to the will and codicil of Calvin Beatty, and though some courts may hold that presumptively the words "next of kin" refer to next of kin determined as of the date of death of the testator, we believe that no court would apply that rule to defeat the clearly expressed intention of the testator that those answering that description were to be determined at a later time.

We believe, therefore, that it was the intention of the testator that the next nearest of kin who were to take under the substitutionary gift were to be determined as of the date of the death of the life tenant, Sadie Beatty Hoyt. Whether the next nearest of kin referred to are those of the testator or those of Sadie Beatty Hoyt makes no difference in the result. George L. Beatty was the only person answering the description under either interpretation. The decree of the chancellor confirming title to the land in question in the devisees of the will of George L. Beatty was correct and it will be affirmed.

*Decree affirmed.*