(No. 33302.—

LILLIE WILLIAMS *et al.*, Appellants. *vs.* ISAAC W. FULTON *et al.*, Appellees.

*Opinion filed November 18, 1954—Rehearing denied Jan. 18, 1955.*

J. L. McLaughlin and J. M. McLaughlin, both of Sullivan, for appellants.

Edie & Corbett, of Monticello, and Bryan Wilson, of Bement, (C. E. Corbett, of counsel,) for appellees.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

Plaintiffs-appellants appeal directly to this court from a decree of the circuit court of Moultrie County dismissing for want of equity a bill for partition and accounting. A freehold being involved, this appeal properly comes to this court.

Barnabas W. Fulton died testate in Moultrie County on January 10, 1895, leaving surviving him a widow and two sons, *viz:* Barney Fulton, a son by a former marriage, and the defendant, Isaac W. Fulton, a son by his last marriage.

The will of Barnabas W. Fulton, which was duly admitted to probate in Moultrie County, by its first paragraph devised to the surviving widow, in fee simple, 160 acres in Shelby County. The second paragraph of said will, which is the paragraph here in issue, provided as follows:

"I give and devise to my beloved son Barney Fulton the Southeast Quarter of Section 5 in Township 15 North of Range 6 East of the Third Principal Meridian in the County of Moultrie and State of Illinois, to have and to hold the said Quarter Section during his natural life with no power to sell or dispose of said life estate with remainder in fee simple to the heirs of his body and in case he should die without children or descendants of children then said real estate to descend to his nearest of kin according to the rules of descent as declared by the Statute of the State of Illinois."

The third paragraph of said will made a devise of another quarter section of farm land in Moultrie County to the defendant Isaac W. Fulton in identical language. The fourth paragraph of said will contained directions concerning the possession and rental of the testator's farm lands until certain mortgages were discharged, and the fifth paragraph appointed the surviving widow executor.

After the death of Barnabas W. Fulton, his son Barney Fulton went into possession of the quarter section of land described in the second paragraph of said will and con-

tinued in possession until he died intestate on January 21, 1930, leaving him surviving his widow, Lou Fulton, and the defendant, Isaac W. Fulton, as his sole heirs-at-law. Since the death of Barney Fulton, the defendant Isaac W. Fulton has collected all rentals from the quarter section of land described in paragraph 2 of the will of Barnabas W. Fulton and has paid all taxes thereon.

Lou Fulton, the surviving widow of Barney Fulton, died testate in 1942, and the plaintiffs-appellants are the residuary beneficiaries under the terms of her will, or their alleged successors in title.

The bill for partition and accounting filed by plaintiffs-appellants alleges that an undivided one-half interest in the quarter section of land in question vested in Lou Fulton at the death of her husband, Barney Fulton, under the terms of the second paragraph of the last will of Barnabas W. Fulton, and that the other half vested in the defendant, Isaac W. Fulton. The answer filed by defendants-appellees alleges that the widow of Barney Fulton is not within the meaning of the term "nearest of kin according to the rules of descent as declared by the Statute of the State of Illinois," as used in paragraph 2 of the last will of Barnabas W. Fulton, and also pleads the twenty-year Statute of Limitations as a bar to the claim of plaintiffs-appellants.

The trial court, in dismissing the complaint for want of equity, held that paragraph 2 of the will of Barnabas W. Fulton vested title to the quarter section of land in the defendant, Isaac W. Fulton, as the nearest blood kin of Barney Fulton, on his death, to the exclusion of the surviving widow of Barney Fulton, and that the plaintiffs were further barred by the twenty-year Statute of Limitations.

The assignment of errors presents two issues for decision by this court. First, the proper legal construction of the will of Barnabas W. Fulton, deceased, and second, the application of the defense of the twenty-year Statute of Limitations.

As established by a long line of decisions of this court, and as restated in the recent case of *Sloan* v. *Beatty,* 1 Ill. 2d 581, the paramount rule of testamentary construction is that the intention of the testator, as expressed in his will, governs the distribution of his estate, and the intention of the testator, once it has been ascertained, will be given effect unless to do so would violate some settled rule of law or would be contrary to public policy. All rules of construction yield to the intention of the testator as expressed in the will and no rule of construction will be applied to defeat that intention.

Effect must be given to the whole will and the testator's intention cannot be determined from the language of any particular clause, phrase or sentence. Since wills are seldom exactly alike the precedents in other will cases are seldom of controlling importance in determining the intention of the testator as expressed in the particular will under consideration.

Under these controlling principles, what is the intention of the testator here as expressed in his will by the phrase "in case he should die without children or descendants of children then said real estate to descend to his nearest of kin according to the rules of descent as declared by the Statute of the State of Illinois?"

There is no distinction between the phrase "nearest of kin" and the phrase "next of kin," and the same can be considered synonymous. The phrases "next of kin" and "nearest of kin," as shown by the English decisions, the decisions in other States, and the Illinois decisions, have been interpreted or construed in two ways, when unqualified by other words: first, as meaning the nearest blood relations according to the laws of consanguinity, and, second, as those entitled to take under the statutory distribution of intestate estates. In Illinois the phrase "next of kin," when contained in a will *simpliciter* or unqualified by other words, has been held to mean the nearest blood relations, accord-

ing to the laws of consanguinity. (*Hammond* v. *Myers*, 292 Ill. 270; *Sloan* v. *Beatty*, 1 Ill. 2d 581.) The opinion in the *Hammond case*, however, relies upon authorities which clearly indicate that such is the meaning of the phrase "next of kin" only when used alone and *simpliciter*, and is not necessarily applicable if there is something more in the will indicating that the testator intended to restrict or to enlarge the unqualified meaning of the phrase.

We have found no Illinois decision where the phrase "nearest of kin" or "next of kin," when used in connection with a reference to the statute of descent, has been construed.

Although an annotation in volume 32 of American Law Reports 2d, at page 316, states that by an overwhelming preponderance of authority the term "next of kin" when used in a testament does not include among the principals thereby designated a spouse, unless a contrary intention plainly appears, there clearly exists a conflict in the decisions where reference is also made in the same phrase to the statute of distribution or descent.

Although, as heretofore noted, the Illinois rule of construction limits the meaning of the phrase "next of kin" when used *simpliciter* to the nearest blood relations, the primary question in this case is the meaning intended to be expressed by the use of such phrase in conjunction with the phrase "according to the rules of descent as declared by the Statute of the State of Illinois."

Although this court has recognized and applied a technical legal meaning to the term "next of kin," when used alone, it has likewise recognized that in popular usage it has a broader meaning. In *Wilcox* v. *Bierd*, 330 Ill. 571, this court said, at page 581, as follows: "The term 'next of kin,' in its technical, legal meaning, means persons nearest in degree of blood surviving. In its practical use the term has come to mean, ordinarily, those persons who take the personal estate of the deceased under the statutes

of distribution." In *People* v. *Camp*, 286 Ill. 511, this court had occasion to construe the meaning of the phrase "shall be distributed according to law and the rules of descent as provided by the State of Illinois" standing alone. We there said, at page 516: "The evident meaning of this clause is that in case the contingency therein named should happen, the property and estate of the testatrix should descend and be distributed to her heirs-at-law and next of kin according to our Statute of Descent as in case of intestacy. Her meaning would have been the same had she used the expression, 'then and in such case my said property and estate shall go to and be distributed to my heirs-at-law and next of kin,' because if distributed according to the laws of descent of Illinois it could go to none other than her heirs-at-law and next of kin." In *In re Garrett's Estate*, 249 Pa. 249, 94 Atl. 927, it was held that a deceased legatee's husband was entitled to a statutory share along with the legatee's children under a testamentary direction that should a legatee die in the lifetime of the testatrix the bequest should not lapse but should be "to his or her next of kin in accordance with the intestate laws of the State of Pennsylvania." In so holding, the court said: "A husband is not of next of kin to his wife nor is she of next of kin to him and if the testatrix had merely provided that upon the death of any legatee during her lifetime the legacy should  *  *  be paid to the next of kin of the deceased legatee, the present appeal would be groundless, for the words 'next of kin' would have to be given their strict technical meaning.  *  *  *  The words 'heirs' and 'next of kin' have a well-understood legal meaning and in the absence of any intention by the testatrix to be gathered from her will to give them a popular or other meaning, their technical meaning would have to prevail for she should be presumed to have used them in their technical sense; but if it is clear that she did not intend to so use them her intention as to the distribution of her estate must

prevail in spite of them. No inapt use of words by a testator may defeat his manifest intention unless they compel the application of some rule of law which itself defeats testamentary intention. * * * Her intention to be gathered from the second codicil alone, and the only reasonable meaning to be given to its words, is that she intended to save every legacy to a deceased legatee to those who would take from him or her under the intestate laws of the state. The words 'next of kin' are to be regarded as superfluous or as having been used by the testatrix in their popular sense, meaning those who are entitled to the personal estate of a decedent under the Statute of Distribution."

In determining the testator's intention in the instant case, it appears clear that if the testator had intended to restrict the devolution of his property to the nearest blood relations according to the laws of consanguinity he would have used the phrase "next of kin" alone and stopped, because such phrase, when used alone, had a fixed, established technical meaning. The additional phrase used has a definite fixed meaning also, and to construe the instant will as contended by appellees would completely disregard such phrase in violation of the rule of construction that no clause of a will can be rejected except from absolute necessity. *Heitzig* v. *Goetten,* 347 Ill. 619; *Brittain* v. *Farrington,* 318 Ill. 474.

It is our opinion that in the instant case the testator, by use of the phrase "according to the rules of descent as declared by the Statute of the State of Illinois," negatives specifically any intention that the phrase "nearest of kin" was used in its strict technical sense but affirmatively disclosed an intention to use such phrase in its popular sense as meaning those who would take under the Descent Act of the State of Illinois.

Appellees' arguments that the testator intended the strict technical legal meaning by the use of such phrase are not persuasive for the simple reason that if such meaning was

intended he would have used the phrase "nearest of kin" alone, and made no reference to the Descent Act. The specific direction that the title was to go according to the rules of descent cannot be ignored and treated as being superfluous, but the two phrases, when used in conjunction, clearly express an intention to let the law take its course in the event of the contingency stated in the will.

Since the intention of the testator, as above expressed, violates no settled rule of law and is not contrary to public policy it must be given effect, and a technical legal rule of construction as to only one phrase used will not be permitted to defeat that intention.

Inasmuch as the testator's intention, as expressed in the will itself, was for the property to go according to the statute of descent upon the death of Barney Fulton, leaving no issue, the property here in question went to Isaac W. Fulton, the defendant, and Lou Fulton, the surviving widow of Barney Fulton, as equal tenants in common.

The other issue for decision is the applicability of the affirmative defense of the twenty-year Statute of Limitations to the plaintiffs' claim of title.

We approach the determination of this question with the knowledge, as hereinabove determined, that Isaac W. Fulton and the surviving widow of Barney Fulton were tenants in common at the time Isaac W. Fulton went into possession. Before the possession of one tenant in common can be adverse to a cotenant there must be a disseizin or ouster by outward acts of exclusive ownership of an unequivocal character, overt and notorious, and of such nature as to impart information and apprise the cotenant that an adverse possession and actual disseizin are intended to be asserted, and mere possession by one tenant in common who receives all rents and profits and pays taxes, no matter for how long, cannot be set up as a bar against a cotenant. *Foote* v. *City of Chicago*, 368 Ill. 307; *Clarke* v. *Clarke*, 349 Ill. 642.

And in order to start the running of the State of Limitations against a cotenant it must be shown that the tenant in possession gave actual notice to the tenant out of possession that he was claiming adversely or that the tenant out of possession had received notice of such claim of the tenant in possession by some act of the tenant in possession which would amount to an ouster or disseizin. *Roberts* v. *Cox,* 259 Ill. 232; *Steele* v. *Steele,* 220 Ill. 318.

The twenty-year Statute of Limitations being an affirmative defense in this case, the burden of proof was upon the defendants to prove disseizin or ouster of the cotenant not in possession by a positive, affirmative act. There is no competent evidence of such disseizin or ouster in the record, and the defense of the Statute of Limitations was not proved as a bar to the claim of the plaintiffs.

The decree of the lower court is reversed and this cause is remanded, with directions to enter a decree granting partition as prayed in the complaint, and to consider the issues with respect to the accounting.

*Reversed and remanded, with directions.*