(No. 23945.—
HARRY E. RIDDLE, Trustee, Appellant, *vs.* WILLIAM A. KILLIAN *et al.* Appellees.

*Opinion filed February 18, 1937—Rehearing denied June 2, 1937.*

BRACKEN, RADLIFF, LIVINGSTON & MURPHY, LEDERER, LIVINGSTON, KAHN, ADLER & ADSIT, and HOOPES & PEFFERLE, (SIGMUND LIVINGSTON, and THOMAS W. HOOPES, of counsel,) for appellant.

WHITMORE & WHITMORE, and STONE & WRIGHT, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

A decree entered by the circuit court of McLean county construed the last will and testament of Michael Killian. From that decree, Harry E. Riddle, the trustee in bankruptcy of William A. Killian, a son of the testator, prosecutes this appeal.

Michael Killian, a resident of McLean county, died testate on January 1, 1913. He left surviving Maria Killian, his widow, and their five children, John J., Edmond J. and William A. Killian, Mary A. Killian Kelley and Katherine Dee, his only heirs-at-law. Killian's last will and testament was proved and admitted to record by the county court of McLean county. By the third section of his will Michael Killian devised and bequeathed to his wife all of his real estate for her life, "it being my express intention that she shall have full power and control over all of said lands, the same as if she owned them absolutely during her entire life, and it shall be her duty to keep the same in good repair and condition and to pay all taxes on the same." The fifth section is as follows: "It is my will that at the death of my beloved wife the following described land, * * * in McLean county, Illinois, containing in all two hundred (200) acres, more or less, shall go to and vest in my son, William A. Killian to whom the above land is given, devised and bequeathed, with this express condition, namely: That he shall not sell nor convey the same during his life time, but he may during his life time, and after the death of my said wife, make such conveyance of the same as he may desire; said conveyance, however, not to take effect until after the death of the said William A. Killian, and with this further express condition, namely: That the said William A. Killian shall pay on the first day of June, of each and every year after the death of myself and my wife, the sum of three hundred ($300) dollars to my son, John J. Killian during his lifetime and the land hereby devised to my said son, William A. Killian, is hereby charged with the payment of the above sums as herein provided. In case said William A. Killian shall convey or attempt to convey the said land or any part thereof contrary to the provisions of this will, his title thereto shall be deemed forfeited, and the land granted to him shall revert to and become a part of my estate. Said William A. Killian after

coming into possession of said land shall keep the buildings and improvements on the same in good condition and repair and pay all taxes on the same."

By the sixth section of the will 225 acres of land in McLean county was devised in identical language to another son, Edmond J. Killian, with the exception that this tract was charged with the payment of $300 annually to the testator's daughter, Katherine Dee, after the deaths of the testator and his wife. The fourth section devised another parcel of land to Mary A. Killian Kelley and charged the land with the payment of $100 annually to Katherine Dee and a like sum to John J. Killian. The seventh section then provided for the payment of $400 annually to Katherine Dee after the deaths of the testator and his wife, $300 to be paid each year by Edmond J. Killian and $100 by Mary A. Killian Kelley, as provided by the fourth and sixth sections, so long as Katherine Dee should live. The eighth section, similar to the seventh, provides: "I give, devise and bequeath to my son, John J. Killian, the sum of four hundred ($400) dollars to be paid annually to him in person on the first day of June in each and every year after the death of myself and my beloved wife, and so long, as the said John J. Killian shall live. And it is my will that the said sum of four hundred ($400) dollars be paid as follows: Three hundred ($300) dollars each year by my son, William A. Killian, and one hundred ($100) dollars each year by my daughter Mary A. Killian as hereinbefore provided."

The ninth section of the will declares: "It is further my will that in case of the death of my son, William A. Killian, his widow, if he should leave a widow, shall have the use of eighty (80) acres of the land herein bequeathed to the said William A. Killian, to be selected by her, for her use during her natural life only, and in that case she shall keep the buildings on the same in good condition and repair, and pay the taxes assessed against said eighty acres; and shall

also pay her proportion, based upon the number of acres, of the annuity charged against said land." The same provision is made for the widow of Edmond J. Killian by the tenth section.

The eleventh section of the will provided further: "It is my will that in case of the death of Mary A. Killian, William A. Killian or Edmond J. Killian that the following provisions be observed and binding upon my estate: First— Should either of these three named children die prior to the death of my said wife leaving child or children, of their own, then the child or children of the one so dying, shall take the full share of such deceased child, subject to all the conditions of this will. Second—Should either of my said three children die prior to the death of my said wife leaving no child or children, then the property hereby devised and bequeathed to said child shall go to and become the property of the remaining of said three children jointly, subject to the foregoing provisions as to the widows of William A. Killian and Edmond J. Killian. The three children herein referred to are Mary A. Killian, William A. Killian and Edmond J. Killian." The will contained no residuary clause.

William A. Killian was adjudged a bankrupt on January 6, 1933. His bankruptcy schedules listed the land described in the fifth section of his father's will but did not state the quality or quantity of title which the bankrupt claimed to own in the property. Pursuant to the order of the referee in bankruptcy of the district court of the United States for the southern district of Illinois, southern division, the trustee in bankruptcy initiated the present litigation for the purpose of seeking a judicial construction of the will of Michael Killian. On the day that William A. Killian was adjudicated a bankrupt, and at the time the trustee filed his complaint, the widow and the five children of the testator were living. The children and, in addition, the wife of William A. Killian and their four children, all

of whom had attained their majority, were made parties defendant. The widow, Maria Killian, was eighty-seven years of age at the time of filing the suit.

Other facts disclosed by the pleadings pertinent to the issues involved are: John J. Killian was dissatisfied with the annuity of $400 bequeathed to him, the payments to commence only after the deaths of the testator and his wife. He threatened to contest the will. To avoid this, an agreement was entered into about a year after Michael Killian's death by which William and Edmond agreed to pay John $400 per year during the lifetime of their mother. The contract provided that these annual payments to John should be made a charge upon the land devised to his brothers to the extent of $200 each.

The present controversy concerns the construction of the fifth, eighth, ninth and eleventh sections of the will. The decree construed the will, so far as pertinent to this inquiry, as a devise to William A. Killian of a contingent interest in the land described in the fifth section of the will, such interest to vest only if he survives his mother, in which event he will become vested with an estate for life with the power to convey, limited, however, by the condition set up in the fifth section of the will that such conveyance of the fee shall not take effect during the lifetime of William, and subject to the charge of John J. Killian, for the payment of $200 annually until the death of Maria Killian and $300 per year thereafter, as provided in the eighth section of the will. The chancellor accordingly found that on January 6, 1933, the day on which William A. Killian was adjudged a bankrupt, he had no interest in the farm which was subject to seizure or sale upon execution, or that could have been otherwise transferred.

To obtain a reversal of the decree the plaintiff makes the contention, among others, that under the fifth and eleventh sections of the will William A. Killian took a vested remainder in fee and, conversely, that his interest is neither

contingent nor a life estate. In determining whether the interest of the bankrupt, William A. Killian, on January 6, 1933, in the property described in the fifth section of the will of Michael Killian was vested or contingent, certain cardinal canons of testamentary construction as well as established rules of property are applicable. The purpose of construing a will is to give it the meaning and interpretation which the testator intended, and his intention, as ascertained from a consideration of the entire will, will be carried out whenever it can be done without violating some established rule of law or public policy. (*Johnson* v. *Boland*, 343 Ill. 552; *Liesman* v. *Liesman*, 331 id. 287; *Jones* v. *Miller*, 283 id. 348; *Little* v. *Bowman*, 276 id. 125.) Whether a remainder is vested or contingent in a given case depends not alone upon the language used in creating such remainder, but also upon the intention of the testator as disclosed from a consideration of the whole will. (*Jones* v. *Miller*, *supra.*) Although, in case of doubt, courts will favor that construction which will vest the remainder at the earliest opportunity (*Johnson* v. *Boland*, *supra*; *Boys* v. *Boys*, 328 Ill. 47; *Lachenmyer* v. *Gehlbach*, 266 id. 11; *Chapin* v. *Crow*, 147 id. 219;) it is nevertheless the intention of the creator that controls. *Jones* v. *Miller*, *supra*; *Chapin* v. *Crow*, *supra*.

The plaintiff directs our attention to the words "shall go to and vest in my son, William A. Killian, to whom the above land is given," employed in the fifth section of the will. He also emphasizes the use of the words "devised" and "title" in the following expressions in the same section, "and the land hereby *devised* to my son William A. Killian," and "his *title* thereto shall be deemed forfeited and the land herein granted to him shall revert." It is urged that they demonstrate the interest of the devisee, William A. Killian, is not contingent. Immediately preceding the first clause invoked the testator limited it by these words, *"at the death of my beloved wife* the following described

land," signifying an intention to postpone giving any interest in the property in question to the designated devisee prior to the death of the life tenant. Furthermore, the quoted language must be construed together with the subsequent provisions of the will. In the same section, the testator has prohibited William from either selling or conveying the tract described during the lifetime of his mother, the life tenant. The succeeding clause gives him the power to make a conveyance under the conditions specified but it does not purport to give him the right to sell the property at any time. By completely denying William the right to sell the property and restricting his right to make a conveyance until after the death of the life tenant the testator attempted to keep the land in his family as long as required to accomplish his objectives. Section 5 further provides that such conveyance as the son may make after his mother's death shall not take effect until after his (William's) death. The conditions attached to the conveyance are for the obvious purpose of preventing the conveyance of William's life estate, and, conversely, to assure him a life estate in the property if he survives his mother, irrespective of his own attempts to interfere with that estate. The fifth section also provides that after coming into possession of the property William shall keep the buildings and improvements on the premises in good condition and repair, and pay the taxes. Recourse to the ninth section of the will discloses that in the event William's wife survives him she is given the right to select eighty acres of the tract described in the fifth section for her use during her life. The eleventh section further limits the devise to William by providing, first, that in the event he does not survive the life tenant, his mother, the tract mentioned shall go to his children, if any, (not to his heirs-at-law) and, in the alternative, to two of his four brothers and sisters to the exclusion of the other two. Conceding that the quoted words are clear and unambiguous they do not stand alone but are restricted by subsequent

words in the will. Every clause and provision in a will, if possible, should be given effect according to the testator's intention, but where two clauses are so repugnant to each other that reconciliation is impossible, the later clause is considered as intended to modify or abrogate the earlier. (*Liesman* v. *Liesman, supra; Hamlin* v. *United States Express Co.* 107 Ill. 443.) In particular, a devise of a fee may be reduced, qualified or cut down by subsequent language in a will. *Liesman* v. *Liesman, supra; Little* v. *Bowman, supra.*

A contingent remainder has been defined as a legal future interest after a particular estate of freehold limited upon an event (precedent in fact and in form to its taking effect in possession) which may happen before or after, or at the time of or after, the termination of the preceding estate of freehold. (Kales on Estates and Future Interests, (2d ed.) sec. 96.) Again, a remainder limited to take effect either to dubious and uncertain persons or upon a dubious and uncertain event is a contingent remainder. (2 Blackstone's Com. 169; *Carter* v. *Lewis,* 364 Ill. 434; *Friedman* v. *Friedman,* 283 id. 383; *Jones* v. *Miller, supra; Smith* v. *Chester,* 272 Ill. 428; *Golladay* v. *Knock,* 235 id. 412; *Thompson* v. *Adams,* 205 id. 552.) This court, in *Jones* v. *Miller, supra,* observed: "The main thing which distinguishes a vested from a contingent remainder is its present capacity to take effect in possession in a determinate person immediately upon the determination of the particular estate. In the one case there is a person in being ascertained and ready to take with a present right of future enjoyment, while in the other there is either no ascertained person in being ready to take immediately upon the determination of the particular estate or it is uncertain whether the event upon which the estate is to vest will ever happen. It is the uncertainty of the right to take the property, and not the enjoyment of it, that distinguishes a contingent from a vested remainder." The distinction between vested and

contingent remainders has been precisely stated by Professor Gray. "Whether a remainder is vested or contingent," he states, "depends upon the language employed. If the conditional element is incorporated into the description of, or into the gift to the remainderman, then the remainder is contingent; but if, after words giving a vested interest, a clause is added divesting it, the remainder is vested. Thus, on a devise to A for life, remainder to his children, but if any child dies in the lifetime of A his share to go to those who survive, the share of each child is vested, subject to be divested by its death. But on a devise to A for life, remainder to such of his children as survive him, the remainder is contingent." (Gray's Rule Against Perpetuities, sec. 108.) This classic exposition has been frequently approved by this court. (*Smith* v. *Chester, supra; Lachenmyer* v. *Gehlbach, supra; Brechbeller* v. *Wilson,* 228 Ill. 502.) A common example of a contingent remainder is where, after a life estate, an interest is limited to individuals, or to a class, provided they survive the life tenant. Kales on Estates and Future Interests, (2d ed.) sec. 309; *Kamerer* v. *Kamerer,* 281 Ill. 587; *Blakeley* v. *Mansfield,* 274 id. 133; *Smith* v. *Chester, supra; Phayer* v. *Kennedy,* 169 Ill. 360; *Temple* v. *Scott,* 143 id. 290.

A consideration of the whole will discloses that the manifest intent of the testator, so far as this case is concerned, was to give his wife, the widow, a life estate in the property described in the fifth section, with a remainder to their son William, if he should be living at the time of the death of the life tenant. A dominant desire of the testator was for his wife, the life tenant, to have the use and enjoyment of all his real estate during her lifetime, for three of his five children to have the use of different parcels thereof if they should survive their mother, and, further, for the wives of William and Edmond to have the use of portions of two tracts for life in the event they survive their respective husbands. Retention of the land by the

testator's family was also desired in order to provide for
the payment of annuities which will be charges against the
property for the benefit of two of the testator's children
after the death of their mother. The provision of sec-
tion 5, that William A. Killian, upon coming into posses-
sion of the land, shall keep the buildings and improvements
in good condition and repair and pay the taxes, conforms
to the testator's plan that this land should be retained by
William during his lifetime and so maintained that at his
death eighty acres of it can be set aside for his wife, with
the taxes paid and the improvements in good condition, and
that ultimately it will go to the final beneficiaries with im-
provements made and taxes paid. Obviously, this provi-
sion is superfluous if the testator intended to devise an in-
terest in fee to his son. To preserve the land for the use
and benefit of the beneficiaries mentioned the testator fur-
ther provided that his son William should have a power to
convey, provided, however, that he should not attempt to
make a conveyance until after the life tenant's death and
then, further, that such conveyance should be made to take
effect only after William's death and should be subject to
the use of eighty acres by his wife. The restricted power
to convey a fee during his lifetime after his mother's death
is solely by virtue of the independent power of conveyance
contained in the will and not by reason of any fee simple
title vested in him. A recognized distinction obtains be-
tween a power and a right of property. A mere power of
conveyance or disposition annexed to a lesser estate does
not enlarge the estate, as it does not necessarily imply
ownership but may be a mere authority conferred by a will
or deed. (*Woods* v. *Seymour,* 350 Ill. 493; *Williams* v.
*Elliott,* 246 id. 548; *Ducker* v. *Burnham,* 146 id. 9; *Walker*
v. *Pritchard,* 121 id. 221.) Limitation of the power to
make a conveyance to a period of time following the death
of the life tenant tends to show that prior thereto the tes-
tator intended for the remainderman to take nothing. Like-

wise, it indicates that if William survives his mother he shall have and retain the property during his lifetime.

Other manifestations of the testator's intention merit scrutiny. It will be observed that the testator's provision for the payment of annuities to Katherine Dee and John J. Killian does not become effective until the death of the life tenant. The entire will manifests a clear intention to conserve the testator's real property so that it will be available for the payment of those charges. Certainly, if the testator did not intend for Katherine Dee and his son John to have the benefit of the provisions made in their behalf during the lifetime of their mother, he likewise did not intend for his son William to take a vested interest in the property in controversy immediately upon the testator's death. The provision in the ninth section in behalf of William's wife differs from a dower interest in the property and is utterly inconsistent with the ownership of the fee by her husband at any time. On the other hand, it is consistent with the testator's apparent intention that the land devised to William should be used by him during his lifetime and that, thereafter, at least eighty acres of it should go to his widow for life. The clearly expressed intent of the testator that William should have an interest in the two hundred acres in controversy only if he should survive his mother, also appears in the eleventh section of the will. It provides that if William does not survive the life tenant the tract devised to him shall go, not to his heirs-at-law, but only to his children, and, in the alternative, if no children survive him, then to a brother and a sister of William. Manifestly, these provisions of the will do not square with the alleged intention to devise a vested remainder in fee to William.

In the light of the principles set forth and the testator's expressed intention the conclusion is inescapable that the remainder to William was made contingent upon his surviving the life tenant and therefore a contingent remainder.

Moreover, the remaindermen under the several provisions of the will cannot be ascertained until the death of the life tenant. The limitation in this case is therefore precedent in form upon a contingency that the remainderman must survive the life tenant. (*Hill* v. *Hill*, 264 Ill. 219; *City of Peoria* v. *Darst*, 101 id. 609.) Two estates in remainder were created, one in William and the other in his children, if any, or, in two of William's brothers and sisters. Remainders of this character, in which the disposition of the property is made in the alternative, the one to take effect only in case the other does not, and in substitution of it, are said to run concurrently, and are commonly denominated alternative remainders or contingent remainders with a double aspect. (*Fisher* v. *Easton*, 299 Ill. 293; *Stevens* v. *Van Brocklin*, 295 id. 434; *Friedman* v. *Friedman*, *supra*; *Smith* v. *Chester*, *supra*; *Furnish* v. *Rogers*, 154 Ill. 569.) Until the vesting of the contingent remainder, or the determination of the impossibility of its vesting, the reversion in fee descended to the heirs of the testator. (*Kammerer* v. *Kammerer*, *supra*; *Belding* v. *Parsons*, 258 Ill. 422; *Bond* v. *Moore*, 236 id. 576.) The testator violated no rule of law or public policy in giving his son William only a contingent interest in a portion of his property, and his intention, therefore, must be given effect. A contingent remainder is not an estate which can be sold on execution in Illinois. (*Hull* v. *Ensinger*, 257 Ill. 160; *Ætna Life Ins. Co.* v. *Hoppin*, 249 id. 406.) It necessarily follows that on January 6, 1933, the devisee had no interest in the property in controversy which passed to the plaintiff trustee in bankruptcy.

The plaintiff also contends that the alleged restraints on alienation in the fifth section of the will, and the limitations over in the fifth, ninth and eleventh sections are void. These remaining contentions rest upon the false premise that William A. Killian took a vested interest in the land described in the fifth section of his father's will. Since the devisee's

interest in the property is merely contingent there is no present necessity for considering these contentions. The life tenant was alive on the day William A. Killian was adjudged a bankrupt, when this litigation was instituted and when the decree was entered. It follows that the occasion may never arise when the restraints attacked by the plaintiff can be invoked.

The decree of the circuit court is right, and it will be affirmed.
*Decree affirmed.*