230 F.2d 377
 Abby Beveridge BAUM, Plaintiff-Appellant,
Richard A. Griffin, guardian ad litem, etc., Plaintiffs-Appellees,
v.
CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, as Trustee under the Last Will and Testament of Abby L. Eddy, et al., Defendants-Appellees.
 No. 11389.
 United States Court of Appeals Seventh Circuit.
 January 4, 1956.
 Rehearing Denied March 19, 1956.
 
 Thomas Hart Fisher, Norman Crawford, Chicago, Ill., for appellant.
 William D. Doggett, Edward J. Hennessy, Chicago, Ill., Herbert A. Friedlich, Chicago, Ill., for appellee Continental Ill. Nat. Bank & Trust Co. of Chicago, as trustee under last will and testament of Abby L. Eddy, deceased.
 Before DUFFY, Chief Judge, and SWAIM and SCHNACKENBERG, Circuit Judges.
 SCHNACKENBERG, Circuit Judge.
 
 
 1
 Abby Beveridge Baum, herein referred to as Mrs. Baum, on behalf of herself and as next friend of her minor children[1] and "as representative of all other issue of Catherine Eddy Beveridge", herein referred to as Mrs. Beveridge, on September 28, 1951 filed a complaint (which was later amended), in the district court naming as defendants Continental Illinois National Bank and Trust Company of Chicago, as successor trustee[2] under the last will and codicil[3] of Abby L. Eddy, deceased, herein referred to as testatrix, The Presbyterian Hospital of the City of Chicago, Mrs. Beveridge, Spencer Eddy, Albert J. Beveridge, Jr., and Albert J. Beveridge, III, Elissa Beveridge and Franklin Beveridge, minors, praying for a construction of the will and for other relief.
 
 
 2
 Answers were duly filed by the successor trustee, Presbyterian Hospital, Albert J. Beveridge, Jr., and guardians ad litem for infant defendants.
 
 
 3
 Mrs. Baum filed a motion for partial summary judgment, supported by an affidavit of her attorney, Thomas H. Fisher. Thereupon the trustee filed a cross-motion for a summary judgment on the whole case, supported by an affidavit of one of its officers.
 
 
 4
 On December 9, 1954, the district court entered the summary judgment from which the present appeal is taken.
 
 
 5
 We now state undisputed facts which are relevant.
 
 
 6
 Testatrix executed her will and codicil on October 15, 1907. She died on January 2, 1909.
 
 
 7
 At the time she made the will her living lineal descendants were: Spencer Fayette Eddy, her son, his son Spencer Eddy, and Mrs. Beveridge, her daughter. At the date of her death these three persons were still living and in addition Albert J. Beveridge, Jr., son of Mrs. Beveridge, was living. In 1939 Spencer Fayette Eddy died. Since the death of testatrix the following lineal descendants of Mrs. Beveridge have been born and are still living: Abby B. Baum, her daughter, the latter's three minor children above referred to, and also the said Albert J. Beveridge, III, Elissa Beveridge and Franklin Beveridge, children of Albert J. Beveridge, Jr.
 
 
 8
 By her will, testatrix created the trust now under consideration. The following provisions inter alia appear in the will:
 
 
 9
 "Fourth: * * * Said Trust estate shall be held for the equal benefit of my two children, Spencer Fayette Eddy and Catherine Eddy Beveridge, and the net income derived from each beneficiary's share of said trust estate shall be paid over to him or her quarterly. One half of the principal of each beneficiary's share of said trust estate shall be paid over and delivered to him or her respectively upon his or her attaining the age of forty (40) years, and the residue of his or her share of said trust estate shall continue to be held by said trustee for and during the life of each of said beneficiaries, respectively. Said Trustee shall keep full and complete accounts, showing all transactions in relation to said trust estate, and at least as often as once in each year said Trustee shall furnish to each beneficiary a written statement showing the condition of his or her share of said trust estate, and all transactions relating thereto subsequent to the last previous statement furnished to each beneficiary. Upon the death of either of my said children, leaving issue him or her surviving, his or her share of said trust estate shall belong and go to and vest in such persons and in such shares and subject to such trusts as he or she shall designate or appoint by his or her last will or testament, and in default of such appointment or disposition by will the same shall go to and vest in his or her surviving issue. If either of my said children shall die leaving no issue him or her surviving, but leaving him or her surviving either the other of my said children, or surviving issue of such other child, then and in such case the share of the child so dying shall in the event that my other child shall then be living be held upon the same trusts and for the same uses and purposes as the share of said trust estate originally held for the benefit of such other surviving child; and in the event that my other child shall not then be surviving, but issue of such other child shall then survive, then and in such case the share of the child dying without issue shall go to and vest in the surviving issue of my other child, per stripes: Provided, however, that if either of my children shall die before attaining the age of forty (40) years, leaving no issue him or her surviving, such child so dying shall have full power and authority to dispose of one half of his or her share of said trust estate by his or her last will and testament.
 
 
 10
 "Fifth: In the event that any of my estate shall be or become intestate under the foregoing provisions of this will, (by reason of the death of both of my children now living, without issue them surviving), then and in such case I give and bequeath all of such intestate estate to the Presbyterian Hospital of Chicago, * * *.
 
 
 11
 "Sixth: It is my will and I direct that neither of my children shall have the power or authority to anticipate, assign or dispose of any income or interest in any property held in trust for him or her under the provisions of this will, and that the same shall not be liable to be taken from him or her by process of law, it being my intention by the trusts created by this will to provide a suitable provision for the support and maintenance of my son and daughter and their respective families, if any, during their lives and of which they shall not be liable to be deprived either by their own act or by process of law."[4]
 
 The district court adjudged and decreed:
 
 12
 A. Mrs. Beveridge became equitably vested with a life interest upon the death of the testatrix, "with alternative equitable contingent remainders (1st) in such persons and in such shares and subject to such trusts as" she "shall designate or appoint by her last will and testament, provided she leave issue surviving her, * * * and, in default of such appointment or disposition by will (2nd), in such" of her issue as shall survive her, "and if she dies leaving no issue her surviving, but leaving her surviving her brother, Spencer Fayette Eddy (3rd), in the trustee of said trust estate to be held upon the same trusts and for the same uses and purposes as the portion of said trust estate originally held for the benefit of said Spencer Fayette Eddy, and if he does not survive the said Catherine Eddy Beveridge, but leaves issue who shall survive her (4th), in such surviving issue of said Spencer Fayette Eddy as shall survive the said Catherine Eddy Beveridge, per stirpes; that said equitable life estate in said Catherine Eddy Beveridge portion of said trust estate created under said will of Abby L. Eddy is now vested in said Catherine Eddy Beveridge, a defendant; that none of said alternative equitable contingent remainders in said portion of said trust estate has yet become vested, or can become vested until the death of said Catherine Eddy Beveridge; and that the plaintiffs, and said other lineal descendants of said Catherine Eddy Beveridge set forth in paragraph (3) of the findings herein, as present living issue of said Catherine Eddy Beveridge, a defendant, have only an equitable contingent remainder in said Mrs. Beveridge portion of the trust estate.
 
 
 13
 B. That a determination of the persons who, if the alternative equitable contingent remainder devised in said will of Abby L. Eddy to the `surviving issue' of Catherine Eddy Beveridge does take effect and vests upon the death of said Catherine Eddy Beveridge, will thereupon become entitled, as such `surviving issue' of said Catherine Eddy Beveridge, to take possession and distribution of the remainder interest in her portion of the trust estate created under said will, is now premature, and that said persons cannot and should not be judicially determined prior to the death of said Catherine Eddy Beveridge, a defendant.
 
 
 14
 C. That the equitable reversion in fee in said Catherine Eddy Beveridge portion of said trust estate created under said will of Abby L. Eddy was on the death of said Abby L. Eddy and now is vested in The Presbyterian Hospital in the City of Chicago, a defendant, pending the vesting of one of the several alternative equitable contingent remainders created in said will in said portion of said trust estate or the determination of the impossibility of any of said remainders ever vesting, and subject to divestment should any one of said remainders vest."
 
 
 15
 Mrs. Baum contends that the district court erred in construing the will as creating contingent remainders, rather than vested remainders in the class of persons described as surviving issue of Mrs. Beveridge, subject to divestment only in the event no living issue survived her. She relies upon the principle of construction that the remainder interests in trusts invariably vest at the earliest possible date or, expressed otherwise, remainders invariably vest at the death of the testator unless there is language in the will which conclusively shows that the remainders cannot vest until a later date. She further contends, as to the fifth article, that The Presbyterian Hospital of the City of Chicago actually received no interest either in the entire estate of testatrix or in the Mrs. Beveridge portion of the trust estate, because both Mrs. Beveridge and Spencer Fayette Eddy, and two of their children (Albert J. Beveridge, Jr., and Spencer Eddy) survived the testatrix.
 
 
 16
 1. (a) It is a well settled rule of law that the intention of the testator is the pole star by which a court is guided in ascertaining the meaning of a will. For over a century, the Illinois Supreme Court has in a very large number of cases announced additional rules for the construction of wills. However, none of them is applicable in this case if its effect is to defeat an intention of the testatrix clearly expressed in applicable portions of her will. Hormann v. Northern Trust Co., 7 Cir., 114 F.2d 118; Barnhart v. Barnhart, 415 Ill. 303, 114 N.E.2d 378; Harris Trust & Savings Bank v. Jackson, 412 Ill. 261, 106 N.E.2d 188, and LeSourd v. Leinweber, 412 Ill. 100, 105 N.E.2d 722.
 
 
 17
 Inasmuch as Mrs. Baum urges that the district court erred in construing the will as creating contingent remainders, we cite the following definitions of a contingent remainder, as set forth in Riddle v. Killian, 366 Ill. 294, at page 302, 8 N.E.2d 629, at page 633:
 
 
 18
 "A contingent remainder has been defined as a legal future interest after a particular estate of freehold limited upon an event (precedent in fact and in form to its taking effect in possession) which may happen before or after, or at the time of or after, the termination of the preceding estate of freehold. * * * Again, a remainder limited to take effect either to dubious and uncertain persons or upon a dubious and uncertain event is a contingent remainder."
 
 
 19
 The court cites Professor Gray's statement:
 
 
 20
 "`Whether a remainder is vested or contingent,' he states, `depends upon the language employed. If the conditional element is incorporated into the description of, or into the gift to the remainderman, then the remainder is contingent; but if, after words giving a vested interest, a clause is added divesting it, the remainder is vested. Thus, on a devise to A for life, remainder to his children, but if any child dies in the lifetime of A his share to go to those who survive, the share of each child is vested, subject to be divested by its death. But on a devise to A for life, remainder to such of his children as survive him, the remainder is contingent.'"
 
 
 21
 Also cited by the court is Kales' statement that "a common example of a contingent remainder is where, after a life estate, an interest is limited to individuals, or to a class, provided they survive the life tenant."
 
 
 22
 The testatrix by the fourth article of her will created a vested equitable life estate in each of her two children, which of course took effect upon her death. Upon the death of either child, leaving issue him or her surviving, the remainder was to "belong and go to and vest in such persons" as he or she appointed by his or her will, and in default of such appointment the same should "go to and vest in his or her surviving issue".[5] It is apparent that no part of the share of the trust in which either child had a life estate would belong, go to or vest in persons appointed by the child's will until the death of said child. It is equally clear that, in default of such appointment by will, no part of the share of either child would go to or vest in his or her surviving issue, until the death of said child.[6] In the first case the will making the appointment would not take effect until the death of the child. In the second case there could be no vesting of the share of the child in his or her surviving issue, until his or her death occurred with issue surviving. The testatrix expressly recognized that a child might die without leaving issue surviving him or her, by making provision that, in such case, that child's share should be held upon the same trusts for the benefit of the other child, but, in the event the other child did not then survive, the share of the child dying without issue should go to the issue of such other child then surviving.
 
 
 23
 The testatrix, by clearly expressed language in the pertinent parts of her will, created contingent remainders and not vested remainders. Referring to the effect of the death of either of her children, leaving surviving issue, she stated in whom the share of such child should then "vest". The use of the word "vest" in the context is, of course, inconsistent with Mrs. Baum's contention that a remainder vested in the surviving issue of Mrs. Beveridge at the date of testatrix' death, subject to divestment only in the event no living issue survived Mrs. Beveridge[7].
 
 
 24
 By the sixth article of her will, testatrix expressly stated her intention to be to "provide a suitable provision for the support and maintenance of my son and daughter and their respective families, if any, during their lives". This intention she clearly carried out by the language creating the contingent remainders to which we have alluded. Her language needs no interpretation or construction.
 
 
 25
 (b) A different situation is presented by the fifth article of the will. It refers to the language creating and defining the operation of the contingent remainders, as "the foregoing provisions of this will", and provides that "in the event that any of my estate shall be or become intestate under the foregoing provisions of this will, (by reason of the death of both of my children now living, without issue them surviving), then and in such case I give and bequeath all of such intestate estate to the Presbyterian Hospital of Chicago, * * *." If the word "intestate" is given its ordinary legal meaning, this article is meaningless. Obviously, any disposition of property under the provision of a will is a testate disposition. Intestacy, in its legal sense, refers only to property of a decedent not disposed of by some provision of his will. Intestacy, strictly speaking, takes effect as of the date of the death of the decedent.
 
 
 26
 We think that the testatrix used the word "intestate", not in its strict legal sense, but rather as pertaining to a situation which might develop and as to which no other provision of her will applied, i. e., the death of both of her children without lineal descendants of the testatrix surviving at the date of death of the second child to die. Hence, we hold that the use of the word "intestate" renders the language of the fifth article ambiguous and in need of construction. The district court did construe that article.
 
 
 27
 A technical construction of words or phrases will not be carried to the extent of defeating the obvious general intention of the testator, and this intention will be given effect even though the language may not be clear or technically correct. Dalton v. Eash, 411 Ill. 296, at page 300, 103 N.E.2d 483; Papa v. Papa, 377 Ill. 316, 36 N.E.2d 717 and Black v. Jones, 264 Ill. 548, at page 558, 106 N.E. 462.
 
 
 28
 In this will the language under consideration means that, if both testatrix' children die and, at the death of the second child to die, no issue of either survives, a remainder estate will be vested in and distributable to The Presbyterian Hospital of the City of Chicago[8]. Until then it has an alternative contingent remainder. If any issue of Mrs. Beveridge or of Spencer Fayette Eddy be living at the death of Mrs. Beveridge, the hospital will never take under this will[9].
 
 
 29
 Insofar as paragraph C of the judgment from which an appeal has been taken is inconsistent with our aforesaid conclusions, it will be necessary that we reverse and remand this case to the district court so that said judgment can be amended accordingly. Incidentally, we note that the district court considered that a reversion in favor of the hospital was created by the will. The court overlooked the distinction between "reversion" and "remainder", which was some time ago recognized by Blackstone when he said that "of expectancies there are two sorts, — one created by the act of the parties, called a `remainder;' the other by act of law, called a `reversion.'" 2 Bl. Comm. 163. That this venerable authority is respected in Illinois, is evidenced by Ayers v. Chicago Title & Trust Co., 187 Ill. 42, 58, 58 N.E. 318 which cites Black's Law Dictionary[10] which in turn relies on Blackstone.
 
 
 30
 2. (a) The fact is undisputed that neither the present trustee nor any of its predecessor trustees has ever furnished to Mrs. Baum or her minor children any written statement showing the condition of the trust estate. The complaint alleges that Mrs. Baum and her children are each "a beneficiary" within the meaning of the fourth article of the will, which is denied by the trustee, and that the trustee has never furnished to them "any such statement or any information whatsoever as to the properties comprising said trust estate, or any of the trustees' actions or transactions relating thereto". The complaint also alleges the delivery of two written demands on behalf of Mrs. Baum and her children to the trustee in 1951, and its failure and refusal to comply therewith. The trustee admits, and also relies upon the fact (established by affidavit on file), that such statements have never been furnished by any trustee except to the life tenants, Mrs. Beveridge and, in his lifetime, Spencer Fayette Eddy, and that Mrs. Baum, Albert J. Beveridge, Jr., and Spencer Eddy, although each had reached majority 20 years or more before this action was filed, have never requested such statements from the trustee, protested nonreceipt of such statements, or otherwise claimed to be entitled thereto, until the demands mentioned in the complaint were made.
 
 
 31
 The district court adjudged that plaintiffs are not entitled to receive such statements, because the words "beneficiary" and "beneficiaries" appearing in the fourth article of the will refer only to testatrix' children, mentioned as life tenants, and not to any remainderman of the trust estate.
 
 
 32
 Because the provision in the fourth article, dealing with the duty of the trustee to furnish written statements, immediately follows the provision that the trust estate is to be held for testatrix' two children and that the net income derived from "each beneficiary's share" shall be paid to him or her quarterly, followed by other references to "each beneficiary", we are of the opinion that the provision requiring the trustee to furnish a written statement annually "to each beneficiary", is limited to said two children. There is no provision for the furnishing of statements to the contingent remaindermen. Moreover, unless testatrix expressed an intention that such statements should be furnished to contingent remaindermen, we believe we have no right by construction to insert a provision into the will which would require the furnishing of such statements to individual contingent remaindermen, many of whom might be, and in this case have been and are, minors, some of them mere infants. We cannot believe that testatrix ever intended the trustee to perform such an unreasonable act. We hold that the will imposed no such duty upon the trustee.
 
 
 33
 (b) Mrs. Baum pursues her objective further by contending that, even if the will contains no provision requiring the trustee to furnish accounts to beneficiaries, the law requires it to disclose information at the instance of contingent remaindermen. However, the law is that such disclosure is required, when demanded by contingent remaindermen, only when a showing is made of "mismanagement or other facts giving rise to an inference of waste or that a property right under the trust is likely to be dissipated or wasted". 90 C.J.S., Trusts, § 379, p. 686.
 
 
 34
 In Barnhart v. Barnhart, 415 Ill. 303, at page 323, 114 N.E.2d 378, at page 388, where the foregoing principle was quoted, as it is stated in 65 C.J. 882, the court said:
 
 
 35
 "We believe the better rule to be that while a contingent remainderman should not be denied the right to bring an action against the trustees regardless of circumstances and merely because his interest is remote and contingent, nevertheless, the scope of the right should be limited to that which is necessary to protect his possible eventual interest, i. e., the protection and preservation of the trust res. It should be afforded only where waste, mismanagement or dissipation of assets appear or can be shown. We hold, therefore, that the final paragraph of the decree was correct."[11]
 
 
 36
 This case was followed in Burrows v. Palmer, 5 Ill.2d 434, at page 440, 125 N. E.2d 484, at page 487 (relied on by Mrs. Baum), where the court quoted from an annotation in 144 A.L.R. 791:
 
 
 37
 "In addition to possible right to injunctive relief, the peculiar remedies afforded by equity to trust beneficiaries are commonly available to one having a contingent or future interest in trust property adversely affected by the wrongful acts of the trustee or another."[12]
 
 
 38
 Accordingly, the court in Burrows v. Palmer, supra, 5 Ill.2d at page 441, 125 N.E.2d at page 487, held that contingent beneficiaries under a trust, whose interest in the trust res "is clearly being endangered by his" (the trustee's) "wrongful refusal to administer upon the property in accordance with the terms of the will" * * * "were entitled to maintain this action in equity in order to establish the trust in said property and to secure other relief reasonably necessary to protect and preserve said inheritance for its eventual owners".[13]
 
 
 39
 Mrs. Baum's motion for partial summary judgment made no reference to any claimed right of the contingent beneficiaries for discovery, accounting, or injunctive relief against the trustee, other than the claimed right to receive annual accounts under the testamentary provision hereinbefore referred to. The allegations of the complaint charging the trustee with various breaches of duty and its alleged threats to continue to commit such acts in the future, are by its answer provisionally denied pending a complete detailed audit of the trust from its inception 43 years before the filing of the answer. This was the state of the record when Mrs. Baum's motion for partial summary judgment was filed on April 9, 1954. In this motion she asked that the court, by such judgment, decree inter alia that "there is no genuine issue as to any material fact now remaining in this cause upon any of the issues and matters as to which Plaintiffs now seek a partial summary judgment, * * *."
 
 
 40
 Certainly on April 9, 1954 there were genuine and material factual issues, raised by the complaint and the answer, as to whether trustee had been guilty of breaches of trust in performing its duties. Those issues remain unresolved.
 
 
 41
 In 598 Cases, etc., v. United States, 7 Cir., 211 F.2d 249, at page 251, we said:
 
 
 42
 "Factual issues are not to be tried or resolved by summary judgment procedure. Once it is determined that there exists a genuine and material factual issue, summary judgment may not be granted. In making this determination doubts (of course the doubts are not fanciful) are to be resolved against the granting of summary judgment."
 
 
 43
 Moreover, while Mrs. Baum's motion referred to an account covering the trust estate from its inception to April 30, 1952, a part of which account the motion purports to set forth in detail, revealing a total loss to principal of $45,535.70, she did not ask the court to make any finding or enter any judgment or decree to the effect that waste, mismanagement or dissipation of assets of the trust had occurred. Instead the motion asked, inter alia, that the court adjudge and decree that the trustee and its predecessors "have duly administered"[14] the estate from March 11, 1909 to April 30, 1952 and that the trust estate "has suffered the following losses to principal", reference there being made to the items showing said loss of principal.
 
 
 44
 Whether or not a loss is due to waste, mismanagement or dissipation is not proved only by the fact of loss. Such an event could happen to any trust administration, no matter how prudent or wise it might be. More proof is required. The burden of proof is upon Mrs. Baum.
 
 
 45
 On this record it is clear that the court did not err in finding that there remain triable issues with respect to the alleged liability of the trustee for losses to principal. The court also rightly reserved jurisdiction to try any issues which may be properly raised pertaining to the filed account of the trustee.
 
 
 46
 In accordance with the foregoing reasons, we reverse and remand this cause as to the fifth article of said will for further proceedings consistent with our views, and in all other respects we affirm the judgment from which the pending appeal was taken. Costs in this court will be taxed against Mrs. Baum.
 
 
 
 Notes:
 
 
 [1]
 Franz Baum, Jr., Franziska Baum and Valor Baum
 
 
 [2]
 Herein sometimes referred to as trustee
 
 
 [3]
 Herein referred to collectively as "the will"
 
 
 [4]
 Inasmuch as Spencer Fayette Eddy and Mrs. Beveridge both had reached age 40 and the former had died prior to the filing of this suit, we are concerned here only with the remaining one-half of Mrs. Beveridge's share of the trust estate under articles fourth and fifth of the will
 
 
 [5]
 We have italicized the word "vest" in this sentence for the purpose of emphasis
 
 
 [6]
 The power of testamentary appointment by Mrs. Beveridge is significant only as an indication of the testatrix' intent. Actually, on April 9, 1943 by proper instrument Mrs. Beveridge released said power of appointment
 
 
 [7]
 At the time of the commencement of this suit Mrs. Beveridge was 69 years old
 
 
 [8]
 "* * * as a memorial of my father and mother, Franklin F. and Rachel C. Spencer, to be used in constructing and maintaining a separate wing or department of said Hospital, which shall be named after my parents; the gift last above given to be used in connection with a similar gift or fund given by my sister Delia S. Field, the two gifts to constitute a single fund, to be held and used for the purposes above expressed." This provision appears in said fifth article of the will
 
 
 [9]
 As heretofore pointed out the power of appointment bestowed upon Mrs. Beveridge by testatrix' will was released on April 9, 1943 by Mrs. Beveridge
 
 
 [10]
 Page 460 (now to be found in Black's Law Dictionary, Third Edition, page 723)
 
 
 [11]
 We have italicized this sentence for the purpose of emphasis. The court pointed out 415 Ill. at page 307, 114 N.E.2d at page 380, that the lower court had held in its opinion that certain contingent remaindermen would be entitled to an accounting only if they could substantiate their charges of waste and mismanagement, and by its decree, referred the case to a master in chancery for the purpose of taking testimony
 
 
 [12]
 Italics supplied
 
 
 [13]
 While in Burrows v. Palmer, supra, the contingent beneficiaries made no claim for accounting or information from the trustee, and hence is not directly in point here, as Barnhart v. Barnhart, supra, is, we feel that the language of Burrows v. Palmer supports Barnhart v. Barnhart
 
 
 [14]
 Italics supplied