Estate of A. M. Barnhart, Decd., (A trust), Stella LaZelle Barnhart, Trustee v. Commissioner. Stella LaZelle Barnhart, Petitioner v. Commissioner.
Estate of Barnhart v. Commissioner
Docket Nos. 57993, 57994.
United States Tax Court
T.C. Memo 1959-42; 1959 Tax Ct. Memo LEXIS 208; 18 T.C.M. (CCH) 194; T.C.M. (RIA) 59042; February 27, 1959
*208 George S. Stansell, Esq., for the petitioners. Arnold I. Weber, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion These cases were originally tried before us on December 17, 1956. At that time, despite our exhortations, petitioners were not represented by counsel although the combined deficiencies in these cases were in excess of $50,000 and the issues involved were far from being simple issues of fact. In each case Stella LaZelle Barnhart appeared pro se. She is a woman of advanced age with marked idiosyncrasies. The record made at the trial was deplorable, and in our Memorandum Findings of Fact and Opinion filed herein on January 28, 1958, we were forced to decide the major issues involved against petitioners principally because of a failure of proof. On February 28, 1958, the petitioner in each case appearing by counsel filed a motion for further hearing. These motions were heard by us on March 12, 1958. Being convinced that petitioners would be adequately represented by counsel in any further hearings and that the facts would be fully developed and the issues of law would be intelligently argued, we granted these motions. Further hearings *209 were held herein on June 24, 1958. As more fully described in our Memorandum Findings of Fact and Opinion filed January 28, 1958, the deficiencies determined in Docket No. 57993 were for the years 1950 and 1951 in the total amount of over $10,000, while those determined in Docket No. 57994 were for the years 1948 through 1951 in the total amount of over $41,000. At and subsequent to June 24, 1958, amended pleadings have been filed herein. The issues properly before us are: (1) Whether certain legal expenses and particularly those incident to a lawsuit brought against Stella LaZelle Barnhart individually and as trustee in 1936 and pending during the taxable years are deductible by either petitioner, (2) whether certain alleged condemnation losses affecting the property owned by the trust are deductible by either petitioner, and (3) whether we have jurisdiction to determine and allow to either petitioner an overpayment of income taxes by the petitioner trust for the year 1948 as to which year no determination of deficiency has been made against such petitioner. With regard to the last issue, nothing appears in the pleadings in Docket No. 57993 relating to it except a clause in a *210 sentence in the allegation of errors in the original petition relating to the deficiencies determined for the years 1950 and 1951, which reads: "* * * while he [respondent] permits to stand an income tax which the trust paid for 1948 on distributable income," and a part of the prayer for relief which reads: "* * * and that the income taxes paid by this trust for 1948 * * * in the amounts of $4,287.86 * * * be held * * * refundable to the petitioner." At the time of the first trial herein respondent moved to strike the quoted part of the prayer for relief, which motion was granted. Therefore this issue is before us only in Docket No. 57994 where the amendment to the petition reads in pertinent part as follows: "It is understood that respondent takes the position that the Fiduciary Return for 1948 is closed and not before the Court. Hence, petitioner contends, in the alternative, that the said payment of tax in the amount of $4,287.86 should be deemed made on behalf of the petitioner herein and on account of her individual tax liability for the year 1948; or, in the further alternative, that the amount of the income distributed to her be reduced by such amount, it being clear that *211 since such sum was paid to the government, it was not paid to her." In Docket No. 57994 respondent has filed a motion to strike allegations in petitioner's reply. This motion has been denied. By his amendment to answer filed in Docket No. 57994 respondent affirmatively alleges that the deficiencies in tax should be increased in amounts and are larger than those originally determined. Findings of Fact We find those facts covered by the stipulation to be as stipulated and incorporate herein by this reference the stipulation, together with the exhibits identified therein. Petitioner Stella LaZelle Barnhart, sometimes hereafter referred to as Stella, is now and was at all times material hereto one of the trustees of the testamentary trust created by the last will and testament of Arthur M. Barnhart, Sr. This testamentary trust came to be styled as the Estate of A. M. Barnhart and is also a petitioner herein. In her capacity as trustee Stella filed fiduciary income tax returns on behalf of petitioner estate during the taxable years in issue. Stella filed her individual income tax returns and the fiduciary income tax returns on behalf of the estate during the years 1948 through *212 1950 with the collector of internal revenue for the first district of Illinois, and for the year 1951 with the director of internal revenue, Chicago, Illinois. On July 20, 1911, Arthur M. Barnhart, Sr., of Chicago, Illinois, executed a last will and testament which provided that all his property, after payment of debts and funeral expenses, be placed in trust, and designated his wife, Stella, and two other persons as trustees. Provision was made for successor trustees. By the terms of the trust Stella and her son, Arthur M. Barnhart, Jr., were designated beneficiaries to share the entire net income of the trust for their lives in specified proportions. In the event that Stella should survive her son and the son left no surviving issue, the testamentary trust provided that "then the whole of said remaining net income shall go and be turned over to my said wife, during her life and until her death * * *." Upon the death of Stella, under the above circumstances, all of the trust property remaining in the hands of the trustees "shall be turned over and go, in absolute ownership * * * to my heirs at law under the Statutes of Descent of the State of Illinois." With regard to the powers *213 of the trustees, the will further provided as follows: "(a) During the life of the trusts hereof said Trustees shall care for, protect, invest and reinvest the trust estate hereby confided to them according to their best judgment and discretion. They are hereby given full power to sell and convey at any time and from time to time, as they shall deem best, any of the trust estate at any time held by them hereunder, at such prices and upon such terms as they shall see fit; and no person dealing with them shall be obligated to see to the application of any of the purchase money; they are authorized to make improvements upon real estate according to their best judgment, and to lease real estate for any term or terms up to and including terms of ninety-nine (99) years; they are authorized to employ all such agents, employees and counsel as they may deem expedient in administering the trusts hereof, and to pay therefor, as well as for all other proper charges of caring for, protecting and administering the trust property, out of the trust estate; they shall be entitled and empowered to use their discretion in all things relating to the caring for, administering and investing and reinvesting *214 the trust estate, and shall not be personally liable in any case where they shall have used good faith and reasonable discretion; they are authorized to hold, if they deem best, in the form and condition received by them from me, any of the property, real and personal, which belongs to me at the time of my death. With regard, however, to the real estate investments held by me at the time of my death, it is my request that none thereof be sold until the Trustees shall be of the opinion that it has reached its maximum value, as I have confidence in my real estate investments and desire to express my preference for the holding of the same, but this is a request and is not intended to be mandatory. Investments by the Trustees may include bonds of the United States, or of any of the states of the United States, first mortgages on farm lands in any state, also the bonds of any county, city, school district or municipality of any state; provided, however, that in making investments it is my request that the Trustees shall look rather to the security than to the rate of interest to be obtained. The Trustees hereunder and their successors shall be entitled to have and receive and they shall *215 be paid annually from the trust estate, a reasonable compensation for their respective services hereunder, and none of the Trustees or successors in trust named in this instrument shall be required to give any bond or bonds for the performance of their duties, as long acquaintance with them and experience of their characters have given me the highest trust and confidence in all of them; but in case any Trustee be appointed by any Court to act hereunder, it is my desire, and I direct, that such court appointee be required to give bond for the performance of his duties in the usual manner." The language of the last will and testament of Arthur M. Barnhart does not provide that the corpus of the testamentary trust is to remain unimpaired, and there is no provision that income is to be added to principal. There have been diminutions of the trust capital. Arthur M. Barnhart, Sr., died on May 13, 1913. His will was admitted to probate in Cook County, Illinois, on July 18, 1913, and the final account of his estate was approved and the executors discharged by order of the Probate Court of Cook County entered July 17, 1917. The estate consisted of real estate and personal property appraised *216 at the value of $1,370,348.40 for inheritance tax purposes. Inheritance tax was paid to the State of Illinois in the sum of $32,930.41. The appraised value of each parcel of real estate for inheritance tax purposes was the amount set forth opposite each parcel. Street Address in Chicago, Illinois
Value
515-19 South Clark Street
$110,000
168-172 West Monroe Street
220,710
25-31 North Wells Street
145,909
1913-15 South Wabash Avenue
39,383
2821-29 State Street
16,800
4455 Drexel Boulevard
55,000
1207-1211 South Wabash Avenue
80,000
Southeast corner, 80th and
Halsted Streets
18,393
Halsted Street, South of 80th Street
3,100
1919 South Wabash Avenue
19,575
On April 7, 1936, Arthur M. Barnhart, Jr., the son of Stella and Arthur M. Barnhart, Sr., died intestate, unmarried, and without surviving issue. Stella was continuously a trustee of the Estate of A. M. Barnhart from its inception. During the taxable years in issue Livy L. LaZelle, an elderly brother of Stella, was the sole successor cotrustee. Stella was much more active than Livy in the activities of the trust and has in effect directed its operation for over 30 years. Stella has not been *217 a trustee in any instance other than in the estate of A. M. Barnhart and the estate of her son. Upon the death of her son, Stella became and has remained the sole life beneficiary of the Estate of A. M. Barnhart, with all income distributable to her. On August 13, 1936, an action was brought against Stella and others in the Circuit Court of Cook County, Illinois, by certain descendants of the full brothers of Arthur M. Barnhart, Sr., identified in the records of that Court as Case No. 36-C-8963. The original complaint was subsequently amended, and thereafter a second amended and supplemental complaint was filed on July 8, 1938. Stella employed the firm of Kirkland, Fleming, Green, Martin and Ellis of Chicago and Edson R. Sunderland of Ann Arbor, Michigan, to represent her and her cotrustee in this action. The complaint in Case No. 36-C-8963 was brought, inter alia, against Stella and her cotrustee individually and as trustees under the last will and testament of Arthur M. Barnhart, Sr., and demanded, inter alia, (1) an accounting; (2) restoration by petitioner and her cotrustee of any losses to the estate due to the improper making of investments or retention of property by *218 the trustees; (3) that such restoration of loss or impairment of the corpus of the trust estate be made out of income payable to Stella as life beneficiary; (4) appointment of a new trustee; (5) appointment of a receiver pending the disposition of the lawsuit; (6) a determination as to whether repayment had been made by Stella of sums advanced to her by the executors of the Estate of A. M. Barnhart to pay inheritance taxes against her life interest and for repayment of such amounts by making them a charge against income; (7) that the plaintiffs in the lawsuit be determined to be the heirs-at-law of the testator, Arthur M. Barnhart, Sr., and that the plaintiffs or their descendants were the only persons entitled to share in the distribution of the corpus of the Estate of Arthur M. Barnhart, Sr., upon the death of Stella; (8) that the Court find and determine that Stella, individually and as administratrix of the estate of her son, Arthur M. Barnhart, Jr., deceased, had no interest in the corpus of the Estate of Arthur M. Barnhart, Sr., that the Court further find and determine that Stella was not and was not intended to be an heir-at-law of the testator and was not entitled to share *219 in the corpus of his Estate as his heir-at-law or as heir-at-law of her son Arthur M. Barnhart, Jr., and that the Court further determine that the said Arthur M. Barnhart, Jr., was not an heir-at-law within the meaning of that term as used and employed in the last will and testament of Arthur M. Barnhart, Sr., and that he was not intended to share in the corpus of the Estate of said Arthur M. Barnhart, Sr., as his heir-at-law; and (9) that the costs of the lawsuit, including attorney fees for the plaintiffs, be assessed against the assets of the trust. The answer of Stella and her cotrustee, as defendants in Case No. 36-C-8963, included, inter alia, a denial that the plaintiffs were the heirs-at-law of the testator, and a denial that the plaintiffs or their descendants were the only persons entitled to share in the distribution of the corpus of the Estate of A. M. Barnhart, and an assertion, on the contrary, that neither the plaintiffs nor any of their descendants had any interest of any kind or nature whatever in the trust estate created under the will. On June 23, 1942, Stella and her cotrustee, individually and as trustees of the Estate of A. M. Barnhart, and Stella as administratrix *220 of the estate of Arthur M. Barnhart, Jr., moved, as defendants in Case No. 36-C-8963, that the Court sever the issues in that lawsuit, and hold a separate trial on the construction of the will to determine whether the plaintiffs had any interest in the trust estate created by the will of the testator which would justify them in bringing and maintaining the action. On June 24, 1942, the Court in Case No. 36-C-8963 entered an order granting severance of the issue of construction of the last will and testament of Arthur M. Barnhart, Sr., from the action for an accounting, the appointment of a receiver, and other relief. The cause was referred to a Master in Chancery for the purpose of taking testimony and reporting findings of fact and conclusions of law to the Court with respect to the following issues: "1. To determine whether the plaintiffs, or the descendants of the half brothers or sisters of Arthur M. Barnhart, Sr., or any of them, have any interest in the trust estate created under the Will of said Arthur M. Barnhart, Sr., and the nature and extent of such interest, if any. "2. To determine whether attorneys' fees shall be allowed to the attorneys for the plaintiffs and defendants, *221 or any of them, the amount of such allowances, and also whether such attorneys' fees, and the costs of this action, shall be charged against and paid out of the trust estate created under the Will of said Arthur M. Barnhart, Sr." Upon exceptions to the report of the Master in Chancery (who later acted in the capacity of Special Commissioner), the trial court in an opinion filed October 24, 1951, decreed that the phrase in the will "heirs-at-law" meant the decedent's heir-at-law as of the time of Stella's death, that Stella had no interest in the corpus of the estate, that none of the parties to the action was entitled to an allowance of costs and fees from the trust, that the descendants of collateral relatives of decedent of the half blood would have equal status with those of the full blood in ultimately sharing in the corpus of the trust in the proportions fixed in the decree, that those having an interest in the trust would be entitled to an accounting only if they could substantiate the charges of waste and mismanagement alleged in the complaint, that a vacancy existed among the trustees which was thereby filled, and that the cause was referred to a Master for the taking of *222 testimony on the other issues of the case. All parties to the action appealed and on May 20, 1953, in an opinion reported as Barnhart v. Barnhart, 415 Ill. 303, 114 N.E. 2d 378, the Supreme Court of Illinois affirmed the decree of the trial court with the exception of that part thereof relating to the allowance of costs and fees. Stella incurred legal expenses during the taxable years in issue in the following amounts: 1948
$2,765.59
1949
7,016.42
1950
4,005.96
1951
7,540.15
These legal expenses were incurred by Stella in the purchase of lawbooks, for the preparation of leases, and in the defense of Case No. 36-C-8963. The amounts of legal fees claimed on the tax returns, both individual and fiduciary, for the years 1948 through 1951, all related to this lawsuit and the preparation of leases. Stella made certain expenditures to a law firm in connection with the preparation of leases. The amounts paid to this law firm during the taxable years in issue were as follows: 1948 $
1949
163.50
1950
100.00
1951
510.00
Stella made certain expenditures for lawbooks during the taxable years in the following amounts: 1948
$ 76.15
1949
202.01
1950
86.81
1951
86.25
*223 These lawbooks were purchased by her so she could train herself in the law and enable her to check up on her own attorneys. During the taxable years in issue Stella made payments to attorneys and accountants for service rendered in the lawsuit known as Case No. 36-C-8963 in the following amounts: 1948
$2,689.44
1949
6,650.91
1950
3,819.15
1951
6,943.90 All expenses relating to this lawsuit were paid by Stella by checks drawn on her own personal account. It was her practice to make payments in this manner regardless of whether the account paid was a personal debt or a debt of the trust. During the taxable years in issue Stella in her individual tax returns and in the returns filed on behalf of the Estate of A. M. Barnhart claimed the following deductions for legal or attorney fees and expenses: Stella LaZelle
Estate of
Year
Barnhart
A. M. Barnhart
1948
$4,614.16
$ 126.00
1949
3,218.41
2,750.00
1950
3,579.15
100.00
1951
6,730.52
2,500.00
Respondent allowed and disallowed the foregoing claimed deductions for legal or attorney fees and expenses in the following amounts: Stella LaZelle
Estate of
Barnhart
A. M. Barnhart
Year
Disallowed
Allowed
Disallowed
Allowed
1948
$4,000.00
$614.16 $
$126.00
1949
3,000.00
218.41
2,300.00
450.00
1950
3,000.00
579.15
100.00
1951
6,730.52
2,500.00
*224 The Estate of Arthur M. Barnhart, Sr., in 1913 consisted, inter alia, of Lots 4 and 5 in Block 124 in the School Section Addition to Chicago, Section 16, Town 39, Range 14. These lots were then known as numbers 515, 517, and 519 South Clark Street, Chicago, Illinois, and were improved lots. An Illinois inheritance tax appraisal report as of 1913 listed the fair market value of these two lots combined, including improvements, as $110,000. The 1927 real estate assessment list for the city of Chicago covering Lots 4 and 5 described above included only numbers 517 and 519 South Clark Street. In 1941 the city of Chicago brought suit in Case No. 41-C-1270 for the purpose of condemning, among other properties, the above-described Lot 4 on South Clark Street in order to erect the Congress Street superhighway. A jury verdict fixing the compensation for Lot 4 at $13,000 was filed in 1942. Upon petition for payment a court order was entered in 1949 directing payment of the above amount, plus interest and costs, as full compensation for Lot 4. On or about August 26, 1949, Stella executed two quitclaim deeds, one as trustee (in which she was joined with her cotrustee as a grantor), and one *225 in her individual capacity, granting this property to the city, and received the sum of $13,000 in payment for this real estate. In 1945 the Illinois Bell Telephone Company brought suit in Case No. 45-C-7306 for the purpose of condemning, among other properties, the above-described Lot 5 on South Clark Street, for the purpose of erecting a telephone exchange. On January 31, 1946, an agreement was entered into between Stella individually and as trustee and the Illinois Bell Telephone Company, which agreement provided that a judgment should be entered in Case No. 45-C-7036 awarding compensation for Lot 5 in the amount of $13,750. In addition to this amount, the Illinois Bell Telephone Company would pay an amount equal to any excess of fair market value of Lot 5 as of May 1, 1951, over such award specified in the judgment. The fair market value as of May 1, 1951, was to be the fair cash market value which the said land alone, as a separate parcel, would have on May 1, 1951, if it were then wholly vacant and without any building thereon and were not owned or used for any purpose by the Illinois Bell Telephone Company, but taking into consideration all public improvements made or planned *226 up to May 1, 1951. A court order was entered February 1, 1946, directing that compensation be paid for Lot 5 in the amount of $13,750. This payment was made on February 5, 1946. Pursuant to the collateral agreement it was determined in 1951 that additional compensation was due for Lot 5 in the amount of $16,250. On February 5, 1946, Stella as trustee, together with her cotrustee, executed a quitclaim deed to the Illinois Bell Telephone Company covering this property, and on the same date Stella in her individual capacity also executed a quitclaim deed covering this property to the same grantee. Each of Lots 4 and 5 in Block 124 was improved with one or more buildings subsequently razed. The character and value of these buildings are not indicated in the record. The total assessed valuations (including improvements) of the respective lots for local real estate taxation for each of the years indicated were respectively as follows: Years
Lot 4
Lot 5
1913, 1914
$18,992
$17,525
1915, 1916, 1917, 1918
22,989
21,956
1919, 1920, 1921, 1922
31,537
27,787
1923, 1924, 1925, 1926
16,034
14,234 l1927
59,976
52,976 The first year for which data was available *227 showing the assessments of lands and improvements separately was 1927. Such assessments were as follows: Lot 4
Lot 5
Land
$51,975
$51,975
Improvements
8,000
1,000
Opinion KERN, Judge: We first consider the issue having to do with the deductibility of certain legal expenses consisting principally of attorney fees. Respondent concedes that the attorney fees incurred in connection with the making of leases are deductible. With regard to these fees he states on brief as follows: "It is not entirely clear whether it was petitioner Stella LaZelle Barnhart or petitioner Estate of A. M. Barnhart which incurred the above expenses. In view, however, of the fact that the entire income of the Estate of A. M. Barnhart was distributable to petitioner Stella LaZelle Barnhart, this does not pose any real problem. If the expense had been incurred by the Estate of A. M. Barnhart it would reduce that distributable income. If the expense had been incurred by Stella LaZelle Barnhart individually it would reduce her taxable income. The net effect in either case is manifested as a reduction in the tax liability of petitioner Stella LaZelle Barnhart." The expenditures *228 incurred by Stella for lawbooks are so obviously nondeductible as to require no comment. The most troublesome question presented herein is whether the legal expenses proved to have been incurred during the taxable years in connection with the suit described in our findings are deductible. It is our opinion on the record which is now before us that these expenses are deductible by Stella as ordinary and necessary expenses in carrying on her business as trustee. As a general rule these expenses would not be deductible by a casual administrator, executor, or trustee. Estate of Hyman Y. Josephs, 12 T.C. 1069. However, as we pointed out in that case (p. 1070), "it is possible that an administrator's activities in handling a single estate may be of sufficient scope and duration as to constitute his being engaged in a trade or business as administrator, Wallace's Estate v. Commissioner, 101 Fed. (2d) 604; John Preston Rice, 44 B.T.A. 749 * * *." Under this exception to the general rule we held similar expenditures to be deductible by trustees under section *229 23(a)(1)(A), Internal Revenue Code of 1939, in Valentine E. Macy, Jr., 19 T.C. 409, affd. 215 Fed. (2d) 875. While the size and complexity of the trust corpus in the instant cases are not as great as in the Macy case, they are greater than in the usual trust, and the duration of the trust activities here exceeds that of the trust in the Macy case. In our judgment the facts of these cases, as did the facts of the Macy case, present an exception to the general rule and require a conclusion that the legal expenses incurred by Stella in connection with the lawsuit described in our findings are deductible as expenses incurred in the operation of her business as trustee. [1]
Respondent's argument that the expenditures were capital in nature since the questions actually litigated during the taxable years involved title is not, in our opinion, persuasive. No question was raised in the litigation with regard to Stella's title as trustee or her rights as life beneficiary. The primary questions involved were with regard to administration *230 or maladministration of the trust. A showing of interest in the trust corpus on the part of the plaintiffs in the litigation was necessary to justify their right to bring suit. Stella's counsel decided as a part of their trial strategy that the question of the plaintiffs' property interest be litigated first since if this question were decided against them the entire litigation would fall. Stella was a widow advanced in age and without descendants. The record indicates that her only living close relative was a brother who was old and sick. From Stella's standpoint it would be relatively unimportant to establish a remainder interest in the corpus of the trust in her estate after her death, except for the purpose of negating the plaintiffs' remainder interest and thus precluding their attack upon her administration of the trust. As we have said her title as trustee and as life beneficiary (from which she realized the income here involved) was never questioned in the litigation and the question of title in the remainder interest was important to Stella only as an issue, the decision of which might prevent the further prosecution by the plaintiffs of an action calling into question her *231 administration of the trust. Under these circumstances we are unable to say that any material part of the legal expenses here involved was expended by Stella for the purpose of establishing or clearing title to property and was therefore capital in nature. The issue having to do with the deductibility of alleged losses arising from condemnation must be decided in favor of respondent. Petitioners have struggled to carry their burden of proof with regard to the adjusted basis of the property condemned but have failed to do so. Aside from this failure of proof, the issue would have to be decided against petitioners because any losses resulting would be capital losses which would not properly reduce the income or distributable income of the trust. Peoples National Bank, Administrator, 39 B.T.A. 565. The third issue must also be decided against petitioners. Our jurisdiction is strictly statutory in nature and is not subject to equitable enlargement. The relief sought by petitioners is beyond our powers. Decisions will be entered under Rule 50. Footnotes
1. We need give no opinion as to whether the operation of this business was skillfully and efficiently carried on by Stella.↩